Michelle Cameron-Hunsaker (CSB #286143)
HUNSAKER LAW
2667 Camino Del Rio S., Suite 107B
San Diego, California 92108
Telephone: (619) 786-4016
Facsimile: (619) 821-8882
email: mchsdlaw@gmail.com

Attorney for Plaintiff
MELISSA YOUNG

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, THE GEO GROUP, INC, a FL Corporation, JOHN or JANE DOE 1-30, Correctional Officers and Staff of the Federal Bureau of Prisons and the GEO Group.<br><br>Defendants. | Case No. 22CV0125 AJB NLS<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL |

Plaintiff Melissa Young, by and through her counsel Michelle Cameron-Hunsaker, hereby alleges the following:

JURISDICTION AND VENUE

1. This case is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Eighth Amendment to the United States Constitution. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

2. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to consider her state law claims.

3. Venue is proper in the Southern District of California because all of the events complained of and giving rise to Plaintiff's claims occurred in this District. See 28 U.S.C. §§ 1391(b), 1391(e), 1402(b).

PARTIES

4. Plaintiff Melissa Young is a citizen of the United States and a thirty-one-year-old

woman who resides in San Diego, California.

5. Plaintiff Melissa Young was housed at MCC and GEO where pertinent events took place.

6. Plaintiff is unaware of the true name and capacity, whether individual or otherwise, of Defendants John or Jane Doe 1-30, who are BOP correctional officers and staff, and therefore sues these Defendants by fictitious names.

7. At all times relevant to the Complaint, Defendants John or Jane Doe 1-30 acted within the scope and course of their employment with the BOP or with GEO.

8. The BOP is an agency within the United States Department of Justice ("DOJ").

9. Defendant THE GEO GROUP, INC. (hereinafter referred to as "GEO") is a foreign corporation organized and existing under the laws of the State of Florida, and authorized to do business in the State of Calfornia. GEO has entered an appearance, filed a Motion to Dismiss in this case, and may be served through its counsel of record, Susan E. Coleman, BURKE, WILLIAMS & SORENSEN, LLP, scoleman@bwslaw.com, 444 South Flower Street, Suite 2400 Los Angeles, CA 90071-2953.

10. Plaintiff will amend this Complaint to allege the true names and capacities of Defendants John or Jane Doe 1-30 when they have been ascertained.

JURY DEMAND

11. Plaintiff demands a trial by jury in this action for all claims for which it is available.

GENERAL ALLEGATIONS

12. Melissa Young was taken into custody by the Chula Vista Police Department on or about November 17, 2019. She had her first seizure while in the custody of Chula Vista Police Department on November 17, 2019. She was taken to Scripps Chula Vista Emergency Room where she was treated, stabilized and then released into the custody of the US Marshall's Service and transported to The GEO Group's, Western Region Detention Facility. ("GEO.")

13. Defendant GEO operates the Facility pursuant to a contract with the US Marshalls Service (and any supplemental agreements or modifications thereto). Defendant GEO was responsible for the training, supervision, management, and conduct of the officers working in

the Facility. However, GEO failed to train any of its personnel to identify and appropriately respond to inmates who were in urgent need of medical care, nor did they institute appropriate policies and procedures regarding same. GEO further failed to train or supervise its personnel to ensure that persons with disabilities and/or injuries are provided proper housing, medical care and appropriately care for the medically disabled in general population.

14. Defendant GEO is required to follow certain policies and procedures in the operation of the Facility, which specifically include, but are not limited to, the Federal Bureau of Prisons and the standards and guidelines set forth in the Federal Administrative Code.

15. She was initially housed in the medical unit and provided medication pursuant to the aftercare required by Scripp's discharge instructions. However, after two days she was moved to general population where she stayed until she was given bond and released on the same on December 4, 2019. During this portion of her time in GEO, the facility provided to Ms. Young her medications without issue.

16. Ms. Young's Pretrial Services Officer determined that she would benefit from a residential drug treatment program and it was ordered as a term of her bond. She entered in to CRASH Golden House on or about December 4, 2019. Ms. Young continued to receive her medication with CRASH.

17. Ms. Young was discharged from CRASH on January 23, 2020 and reported to Pretrial Services on January 24, 2020. She was transported by US Marshals to Metropolitan Correction Center - San Diego.

18. When Melissa Young arrived at the Metropolitan Correctional Center in San Diego, California ("MCC") on or about November 17, 2019, she was in pretrial trial custody awaiting her case with Southern District Court to proceed. She entered Federal Bureau of Prisons ("BOP") custody that day believing that she would be free from harm and would leave in a condition that would be the same or similar as when she was taken into custody.

19. Defendant Federal Bureau of Prisons operates the Facility MCC. Defendant BOP was responsible for the training, supervision, management, and conduct of the officers working in the Facility. However, BOP failed to train any of its personnel to identify and appropriately

respond to inmates who were in urgent need of medical care, nor did they institute appropriate policies and procedures regarding same. BOP further failed to train or supervise its personnel to ensure that persons with disabilities and/or injuries are provided proper housing, medical care and appropriately care for the medically disabled in general population.

20. Defendant BOP is required to follow certain policies and procedures in the operation of the Facility, which specifically include, but are not limited to, the Federal Bureau of Prisons and the standards and guidelines set forth in the Federal Administrative Code.

21. Ms. Young was twenty-eight years old at the time, she was in recovery from a long term addiction and she was suffering from undiagnosed seizure condition. Before her arrest was caregiver to her Grandmother until she passed and to her parents.

22. Over the course of just a few months mid November and early February 2020, Ms. Young experienced first-hand the neglect of duties, violence and poor treatment that has given the MCC and GEO its reputation.

23. Ms. Young was assigned to the top bunk in MCC in general population. She immediately told the Corrections Office that she needed to be on a bottom bunk due to her seizures. She was ignored and assigned the top bunk despite the request and warning he was given.

24. Ms. Young requested to go to Medical to get her prescribed medications. She was instructed to fill out the form in order to see Medical. She did this. She never received a response and never received her medications.

25. Ms. Young repeatedly requested to see medical and to receive her medications over the span of 5 days. She was merely asked whether she filled out the forms and told to wait. She never saw medical.

26. On January 29, 2020, Ms. Young still had not been seen by medical or received her prescription medications. She was feeling ill and asked the Corrections Officer again to be seen by medical and she was ignored again. She proceeded to go to her bunk and lay down. At which point she had a seizure and toppled from her top bunk to the cement floor below.

27. The other inmates, rushed to get the Corrections Officer’s attention to provide

medical care and transport. They were met by hesitation and allegations that Ms. Young had to be faking it.

28. When finally the corrections officer arrived to assist, Ms. Young was on the floor continuing to seize until she became unresponsive. At this point, you would think that the corrections officers would call EMS and get her assistance. Instead, one officer just kicked Ms. Young while she was in medical peril.

29. The inmates immediately began calling Ms. Young's family when the MCC staff refused to help Ms. Young. Family members called MCC. Ms. Young's defense attorney was called and immediately reached out to MCC to get Ms. Young immediate medical care.

30. Ms. Young was fortunate that the women in her unit cared enough to stand up to the staff and demand that Ms. Young get care and enlisted outside forces to intervene because the requests fell on deaf ears.

31. Ms. Young was transported to UC San Diego Hospital where she underwent an emergency brain surgery due to a brain bleed.

32. Ms. Young woke up a couple days later post surgery, scared and confused. She requested to call her family but her request was laughed off by the Marshall.

33. Ms. Young was transported back to MCC on February 3, 2020 and yet again assigned to the top bunk in general population. One of the woman in the unit, switched with Ms. Young so as to avoid further injury. Again, an inmate took more precaution and care with Ms. Young than MCC staff.

34. On February 5, 2020, Ms. Young was again released to CRASH Golden House II. Intake Coordinators received new medications and stated they would take her to medical appointments due to surgery including removal of staples in her head from surgery.

35. On February 6, 2020, She was not feeling well and began to taste cooper in her mouth (UCSD Doctor provide Ms. Young with the information that a cooper taste is warning prior to seizure.) She requested to go to the ER because she was told by CRASH staff that pretrial had medically cleared her and thus there was no rush to get her to medical services. After several hours of waiting, Ms. Young determined that she had to obtain her own medical

care as CRASH staff was failing to do so. She called her sister, who took her to Sharp Chula Vista Emergency Room around 10:00 am on January 6, 2020. She was admitted and kept for observation until 4:00 am on January 7, 2020.

36. Ms. Young was then transferred to UCSD to be seen by their neurology department, where her brain surgery had been done, for a followup. She was discharged at around 2:00 pm on February 7, 2020.

37. From UCSD, Ms. Young went directly to Pretrial and self-surrendered.

38. Ms. Young was taken into custody and placed at GEO's medical unit on February 7, 2020. She remained in medical until February 10, 2020.

39. On our about February 10, 2020, Ms. Young was placed back in general population. GEO staff were all aware of Ms. Young's seizure condition and the fact that she had had brain surgery due that the fact that the Federal Bureau of Prisons provides relevant information to GEO on persons who are placed in their care and as evidenced by the shaved head and staples.

40. From February 10, 2020 until her release February 26, 2020, the GEO Corrections Officers would daily take an orange mallet and walk down the halls banging it on the cell bars yelling free headaches.

41. Ms. Young begged them to stop and again put them on notice that she had just had brain surgery - the response was that headaches were funny. This caused her severe pain and discomfort and requests for it to cease were literally laughed off and ignored. There was only one exception, Ms. Maggie, who determined that Ms. Young's pain was valid.

42. Ms. Young struggled at GEO to get her medication and to see medical. Request were brushed off or refused. It took outside intervention, from family and her attorney to get her the necessary care that should have been easily provided. She went without her medications for no less than a week after being released from medical while in GEO's custody the second time (2/10/20 to 2/26/20) subjecting her to potential further seizures.

43. The federal regulation governing BOP correctional officers' use of force, 28 C.F.R. § 552.20, states the following:

> The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order.

44. Defendants Officers John or Jane Doe 1-15 failed to use all other reasonable efforts to resolve the situation before they used force on Ms. Young while she was housed at MCC.

45. Defendants Officers John or Jane 1-15 instead used excessive amounts of force on Ms. Young, who was experiencing a medical or mental health emergency and needed assistance when she was housed at MCC.

46. Defendants MCC and GEO tolerated and fostered an environment of disorganization within the facility, including the failure to properly staff the unit, hire competent staff personnel, supervise and train its correctional officers and ensure that injured inmates were screened, assessed, and provided medical treatment in a timely manner. Defendant GEO and MCC took no effective measures to protect Plaintiff and to ensure her safety, including, but not limited to, conduct the appropriate prisoner health assessment and/or a medical evaluation.

47. Defendant MCC failed to initiate appropriate and necessary medical interventions and to transport Plaintiff to an appropriate medical facility in a timely fashion. The delays occasioned by Defendant MCC policies proximately caused the brain bleed requiring surgery.

48. Ms. Young was released to KIVA (another residential treatment program) on February 26, 2020.

49. Defendants Officers John or Jane Doe 1-15 failed to obtain a camera and record any of the events leading to Ms. Young's injuries while she was at MCC.

50. Defendants Officers John or Jane Doe 1-30 both knew of and disregarded an excessive risk to Ms. Young's health but also caused the risk and continued to do so in the face of obvious evidence that they were causing serious harm while she was housed at MCC and GEO.

51. Ms. Young's injuries while in the custody of MCC and GEO as a result of Defendants callous inaction and despicable actions were preventable. Defendants' actions were inhumane,

contrary to BOP and GEO policy, and violated Ms. Young's constitutional and statutory rights. Plaintiff now brings this suit to hold Defendants responsible for their outrageous and unlawful treatment.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Eighth Amendment
Excessive Force
(Against Defendants John or Jane Doe 1-30)

52. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

53. Defendants Officers John or Jane 1's assault and battery upon Ms. Young on January 29, 2020, by kicking her, was unauthorized, unlawful, and applied maliciously and sadistically to cause Ms. Young physical injury.

54. Defendants Officers John or Jane Doe 2-15's assault upon Ms. Young on January 29, 2020 occurred in the presence of other Defendant correctional officers. Each of these Defendants wantonly, recklessly, and with depraved indifference to human life failed to (i) aid Ms. Young, and/or (ii) stop the Defendant correctional officers from violently assaulting Ms. Young, and/or (iii) otherwise intervene on her behalf.

55. Defendant Officers Defendants John or Jane Doe 2-15, in assaulting Ms. Young and in failing to protect Mr. Young, inflicted a cruel and unusual punishment against Ms. Young in violation of her rights under the Eighth Amendment to the United States Constitution for which Plaintiff asserts a claim and seek damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

56. As a direct and proximate result of Defendants' misconduct detailed above, and of Defendants' violation of Ms. Young's constitutional rights, Ms. Young suffered physical injury, severe pain, emotional injury, and death. Accordingly, Plaintiff is entitled to compensatory and punitive damages against Defendants Officers John or Jane Doe 1-30 jointly and severally.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – Eighth Amendment
Deliberate Indifference to Serious Medical Needs
(Against Defendants MCC and John or Jane Doe 1-15)

57. Plaintiff realleges and incorporates by reference each allegation contained in the

preceding paragraphs as if fully set forth herein.

58. Ms. Young began to experience an urgent medical condition that carried a high risk of death, degeneration, and/or extreme pain, which caused her to fall from the assigned top bunk in her cell.

59. This high risk of death, degeneration, and/or extreme pain was obvious or known to MCC and Defendant Officers John or Jane Doe 1-15, who observed and/or were immediately notified that Ms. Young fell and was seizing in her cell, and were made aware that Ms. Young was in need of immediate medical care.

60. By failing to immediately summon medical attention to care for Ms. Young, MCC and Defendants Officers John or Jane Doe 1-15 knew of and disregarded an excessive risk to Ms. Young's health in the face of obvious evidence that they were causing serious harm to Ms. Young.

61. The failure of MCC or Defendants Officers John or Jane Doe 3-15, and others, to provide Ms. Young with adequate treatment for the injuries she sustained on January 29, 2020, including her head trauma, demonstrated deliberate indifference towards Ms. Young's serious medical condition, constituting cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

62. As a direct and proximate result of MCC's and Defendants Officers John or Jane Doe 1-15 misconduct detailed above, and of Defendants' violation of Ms. Young's constitutional rights, Ms. Young suffered physical injury, severe pain, emotional injury, and monetary damages. Accordingly, Plaintiff is entitled to compensatory and punitive damages against Defendants John or Jane Doe 1-15 jointly and severally.

## THIRD CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against Defendant Officers John or Jane Doe 16-30)

63. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

64. From February 10, 2020 to February 26, 2020, Defendant Officers John or Jane Doe 16-30 intentionally traumatized Ms. Young (who had recently had brain surgery) by using an

orange mallet to hit the bars of the cells yelling “free headaches” causing Ms. Young extreme pain and stress.

65. Plaintiff is informed and believes, and thereon alleges, that such acts of Defendant Officers John or Jane Doe 16-30 were intentional, extreme, and outrageous. Ms. Young is further informed and believes, and thereon alleges, that such actions were done with the intent to cause serious emotional distress or with reckless disregard of the probability of causing Ms. Young serious emotional distress.

66. As a direct, legal and proximate result of such acts of Defendant Officers John and Jane Doe 16-30, Ms. Young suffered emotional distress which has caused Plaintiff to sustain severe, serious and permanent injuries to her person, all to her damage in a sum to be shown according to proof.

67. As a direct, legal and proximate result of such acts of Defendant Officers John and Jane Doe 16-30, Ms. Young was compelled to and did employ the services of hospitals, physicians and surgeons, nurses. and the like, to care for and treat her. and did incur hospital, medical, professional and incidental expenses.

68. Ms. Young is informed and believes, and upon such information and belief alleges, that she will necessarily by reason of her injuries, incur additional like expense for an indefinite period of time in the future, all to Ms. Young's damage in a sum to be shown according to proof.

69. Ms. Young is informed and believes that such acts directed towards her were carried out with a conscious disregard of her right to be free from such tortious and criminal behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code § 3294, entitling her to punitive damages in an amount appropriate to punish and set an example of said Defendant.

**FOURTH CAUSE OF ACTION**

(NEGLIGENCE)

(Against Defendant GEO and Defendant Officers 15-30)

70. The allegations setting forth facts from above are incorporated herein by reference. 74. Plaintiff incorporates herein and reasserts for all purposes the pleadings and factual

allegations of all previous and subsequent paragraphs. Plaintiff asserts claims to negligence and negligence per se against Defendants GEO and Does 15-30.

71. At the time of said occurrence, Defendants engaged in a negligent activity by, among other things, disregarding the safety of Plaintiff. The Defendants failed to do what persons of ordinary prudence in the same or similar circumstances would have done or, alternatively, did what persons of ordinary prudence in the same or similar circumstances would not have done.

72. At the times relevant herein, Defendants are in the business of, among other things, (a) designing, financing, building, owning, and managing jails, state and federal prisons, special-purpose institutions, and immigration and detention centers; (b) managing secure prisoner transports and escorts; and (c) managing facility maintenance services, including health care. Defendants held themselves out as having special expertise in the industry. As such, Defendants owed Young a duty to use reasonable care in the (a) operation and management of the Facility; (b) the training, supervision, management, and conduct of the Facility Employee Defendants; Defendants violated these duties. Defendants were negligent. The negligent acts and/or omissions specifically include, but are not limited to, the following:

a. Failed to follow or negligently followed procedures for efficient and prompt health care for acute and emergency situations as required by Bureau of Prisons.

b. Failed to implement; failed to follow; or negligently followed the written plan for inmate services as set forth by the Bureau of Prisons.

c. Failed to provide reasonable means to protect Young;

d. Failed to follow policies and procedures contained in the Defendant GEO's Policies and Procedures Manual; internal policies and procedures; policies and procedures prescribed by applicable agreements; policies and procedures prescribed by applicable law; and/or policies and procedures prescribed by industry standards.

e. Negligently or unreasonably delayed m providing medical attention, which was readily available to Young.

f. Negligently hired, trained, developed, managed, and supervised the

Facility Employee Defendants.

g. Failed to implement adequate safeguards to prevent the incident that resulted in Young's damages.

73. These acts and/or omissions of negligence by the Defendants created an environment in which harm to inmates were likely and reasonably foreseeable to occur, and which in fact did occur in the course of the events hereinabove.

74. These acts and/or omissions of negligence by the Defendants were a proximate and/or a producing cause of the harm resulting therefrom, and damages sustained by the Plaintiff.

75. These acts and/or omissions of negligence by the Defendants were below accepted industry standards and guidelines. It was Defendants' duty to perform its work in accordance with accepted industry standards. Defendants GEO and Does 15-30 breached the above and other duties owed to Plaintiff, and such breaches were a proximate and/or a producing cause of damages to Plaintiff. Accordingly, Plaintiff is entitled to be compensated for her losses sustained as a result of each Defendants' negligent and wrongful acts and omissions.

76. Plaintiff seeks herein, as a result of each Defendant GEO's negligence, all of Plaintiff's actual damages, consequential damages, incidental damages, compensatory damages, mental anguish damages, punitive damages, pre-judgment interest, post-judgment interest, costs of court, expenses of the litigation, and reasonable and necessary attorneys' fees through trial and all appeals in this matter, as allowed by law.

**AGENCY**

77. At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendant MCC or GEO occurred within the scope of the actual or apparent authority of such person on behalf of said Defendant.

78. Defendants MCC and GEO is therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

**RESPONDEAT SUPERIOR**

79. At and during the time of the acts and/or omissions complained of herein, said acts and/or omissions of any employee of Defendants occurred within the scope of the general authority and for the accomplishment of the objectives for which such employee was employed.

80. Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such employee complained of herein under the doctrine of respondeat superior.

**MISNOMER OR MISIDENTIFICATION**

81. In the event any parties are misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein. In the event that the true parties are misidentified, Plaintiff hereby asserts reliance upon the doctrine of misidentification.

**DAMAGES**

82. As a proximate cause, producing cause, and/or cause of the Defendants' conduct, and all other allegations of acts/omissions herein, Plaintiff is entitled to recover actual damages, consequential damages, incidental damages, and compensatory damages, as allowed by law, which specifically include, but are not limited to, the following damages:

a. Medical, hospital, pharmaceutical expenses in the past;

b. Medical, hospital, pharmaceutical expenses that in all reasonable probability will be incurred in the future;

c. Physical pain and suffering in the past;

d. Physical pain and suffering that will m all reasonable probability be incurred in the future;

e. Physical impairment in the past;

f. Physical impairment which, in all reasonable probability, will be suffered in the future;

g. Loss of earning capacity that in all probability will be incurred in the future;

h. Mental anguish in the past;

i. Mental anguish that in all reasonable probability will be incurred in the future;

and

j. Cost of medical monitoring and prevention in the future.

**EXEMPLARY DAMAGES**

83. Plaintiff would further show that the acts and omissions of Defendants MCC and GEO complained of herein were c01mnitted knowingly, willfully, intentionally, with malice, with actual awareness, and with the specific and predetermined intention of emiching said Defendant at the expense of Plaintiff. Defendant GEO specifically intended to cause substantial injury or harm to the Plaintiff. In order to punish said Defendant for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant GEO for exemplary damages.

**ATTORNEYS' FEES AND COSTS**

84. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs.

**PRAYER FOR RELIEF**

85. THEREFORE, Plaintiff Melissa Young respectfully requests the Court for the following:

a. Award punitive damages against Defendant GEO and MCC as appropriate and as allowed by law;

b. Award compensatory damages against all Defendants, jointly and severally, as allowed by law;

c. Grant reasonable attorneys' fees, litigation expenses, and court costs; and,

d. Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

RESPECTFULLY SUBMITTED,

HUNSAKER LAW

Dated: May 1, 2022

/s/ Michelle Cameron-Hunsaker
MICHELLE CAMERON-HUNSAKER
Attorney for Plaintiff
Email: mchsdlaw@gmail.com