UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA YOUNG,<br><br>                                    Plaintiff,<br><br>v.<br><br>LOUIS WILLIAMS, II, THE GEO GROUP, INC., a Florida corporation; JOHN or JANE DOE 1-30, Correctional Officers and Staff of the Federal Bureau of Prisons and JOHN or JANE DOES 16-30 Correctional Officers and Staff at the GEO GROUP, INC.,<br><br>                                    Defendants. | Case No.: 22-cv-00125-AJB-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>**(Doc. Nos. 48, 49)** |

  This is a civil rights action arising out of Melissa Young's ("Plaintiff") time in custody. The operative complaint is the Second Amended Complaint ("SAC"), which Plaintiff brings against Louis Williams, II, ("Williams"), the warden employed by the Federal Bureau of Prisons at Metropolitan Correctional Center, San Diego, the GEO Group Inc. ("GEO"), and their respective Correctional Officers and Staff (all Defendants collectively, "Defendants"). (Doc. No. 34.) Before the Court are two motions: (1) Defendant Williams' motion to dismiss, (Doc. No. 48); and (2) Defendant GEO's motion to dismiss, (Doc. No. 49). The motions to dismiss are fully briefed. (Doc. Nos. 51, 52, 56,

57.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

## I. BACKGROUND[1]

On November 17, 2019, the Chula Vista Police Department placed Plaintiff into custody. (Second Amended Complaint, ("SAC"), Doc. No. 34, ¶ 15.) That same day, Plaintiff experienced a seizure and was taken to Scripps Chula Vista Emergency Room for treatment. (*Id.*) She was then transported to GEO's Western Region Detention Facility. (*Id.*) On December 4, 2019, Plaintiff was released on bond and entered a residential drug treatment program. (*Id.* ¶¶ 18–19.) Plaintiff was discharged from the program on January 23, 2020, and reported to Pretrial Services the next day. (*Id.* ¶ 19.) Plaintiff was then transported to Metropolitan Correction Center ("MCC San Diego"), a facility operated by the Bureau of Prisons ("BOP"). (*Id.*)

At some point between mid-November 2019 and early February 2020, BOP assigned Plaintiff to a top bunk at MCC San Diego. (*Id.* ¶ 24.) She informed the Corrections Office at MCC San Diego that due to her seizures, she required a bottom bunk, but the Corrections Office ignored her request. (*Id.*) Plaintiff also requested to go to the medical department and completed a form to obtain her prescribed medications. (*Id.* ¶ 25.) Plaintiff alleges those requests were also ignored. (*Id.* ¶¶ 26–27.)

On January 29, 2020, Plaintiff felt ill, asked to be seen by the medical unit at MCC San Diego, but was again ignored. (*Id.* ¶ 27.) She thereafter had a seizure and fell from her top bunk. (*Id.*) When other inmates attempted to get help, the officers claimed that Plaintiff was faking the seizure, and one of them kicked her. (*Id.* ¶¶ 28–29.) The corrections officers did not contact emergency medical services. (*Id.* ¶¶ 29–30.) Plaintiff's defense counsel learned about Plaintiff's condition and contacted MCC San Diego. (*Id.* ¶ 30.) She was then transported to UC San Diego ("UCSD") Hospital, where she underwent emergency brain surgery. (*Id.* ¶ 32.)

---

[1] The following facts are taken from the SAC and assumed true for purposes of this motion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Plaintiff returned to MCC San Diego on February 3, 2020, and was again assigned to a top bunk. (*Id.* ¶ 34.) A fellow inmate switched bunks with Plaintiff so Plaintiff could have a bottom bunk. (*Id.*) On February 5, 2020, Plaintiff entered another residential treatment program. (*Id.* ¶ 44.) Plaintiff felt ill the next day and requested to go to an emergency room. (*Id.* ¶ 45.) The medical staff informed her that she had been medically cleared and does not need emergency care. (*Id.*) Plaintiff then called her sister, who took her to Sharp Chula Vista Emergency Room. (*Id.*) The Sharp Chula Vista Emergency Room admitted Plaintiff and kept her under observation. (*Id.*) She was later transferred to UCSD Hospital's neurology department for her post-surgery follow-up and discharged on February 7, 2020. (*Id.* ¶ 46.)

After discharge, Plaintiff was placed in GEO's medical unit, where she remained for three days. (*Id.* ¶ 48.) Plaintiff was then placed in GEO's general population until her release on February 26, 2020. (*Id.* ¶¶ 49–50.) During her time in general population, Plaintiff alleges that GEO corrections officers banged on the cell bars daily, yelling "free headaches." (*Id.* ¶ 50.) Plaintiff informed the officers of her recent brain surgery and requested they stop. (*Id.* ¶ 51.) The officers told her that "headaches were funny" and ignored her requests to stop. (*Id.*) Plaintiff alleges suffering pain and discomfort from the banging of the officers' mallets on the cell bars. (*Id.*) According to Plaintiff, she also struggled to get her medication and see the medical unit at GEO. (*Id.* ¶ 52.)

Plaintiff alleges that MCC and GEO failed to protect and ensure her safety by not conducting appropriate health and medical evaluations. (*Id.* ¶¶ 36–41, 52, 54–57.) She also claims that MCC's failure to provide timely and necessary medical intervention caused the brain bleed that necessitated her surgery. (*Id.* ¶ 41.)

Plaintiff brought suit against Defendants in 2022. (Doc. No. 1.) The Court dismissed the First Amended Complaint, (Doc. No. 33), and Plaintiff later filed the SAC. Plaintiff alleges Eighth Amendment claims for deliberate indifference for failure to protect (Count 1), and deliberate indifference to serious medical needs (Count 3) against Williams and John or Jane Doe 1–15 BOP Correctional Officers and Staff ("BOP Officers"). (SAC ¶¶

58–71; 84–96.) Plaintiff also brings an Eighth Amendment excessive force claim (Count 2) only against BOP Officers. (*Id.* ¶¶ 72–83.) The SAC includes claims for intentional infliction of emotional distress (Count 4) against GEO and John or Jane Doe 16–30 GEO Officers ("GEO Officers"), and negligence (Count 5) against GEO Officers. (*Id.* ¶¶ 97–110.) Finally, Plaintiff brings a claim under the Bane Act (Count 6) against all Defendants. (*Id.* ¶¶ 111–13.) Defendants Williams and GEO filed separate motions to dismiss the SAC. (Doc. Nos. 48, 49.) This Order follows.

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To determine the sufficiency of the complaint, the court must assume the truth of all factual allegations therein and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Although a court must take all of the factual allegations in a complaint as true, it is not required to accept conclusory statements. *Iqbal*, 556 U.S. at 678.

Additionally, a party may seek dismissal of an action pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). The party asserting subject-matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

## III.   DISCUSSION

Defendants Williams and GEO separately move pursuant to Federal Rules of Civil Procedures 12(b)(6) and 12(b)(1) to dismiss with prejudice Plaintiff's SAC. (Doc. Nos. 48, 49.) Williams moves to dismiss Plaintiff's three claims brought pursuant to *Bivens v. Six*

*Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), where Plaintiff alleges constitutional violations under the Eighth Amendment by federal officials for failure to protect (Count 1), excessive force (Count 2), and deliberate indifference to serious medical needs (Count 3) (collectively, the "*Bivens* claims"). (Doc. No. 49 at 9–17.) Williams also argues he is entitled to qualified immunity. (*Id.* at 17.) GEO moves to dismiss Plaintiff's claims for negligence (Count 4) and intentional infliction of emotional distress (Count 5). (Doc. No. 48 at 5–7.) Both Williams and GEO move to dismiss Plaintiff's Bane Act claim (Count 6). (Doc. Nos. 48 at 7–9; 49 at 18–19.)

### A. Plaintiff's Three *Bivens* Claims Under the Eighth Amendment

In the SAC, Plaintiff asserts three *Bivens* causes of action under the Eighth Amendment against BOP Officers for: (1) failure to protect (Count 1); (2) excessive force (Count 2); and (3) deliberate indifference to serious medical needs (Count 3). (SAC ¶¶ 58–96.) Plaintiff also brings the failure to protect (Count 1) and deliberate indifference to serious medical needs (Count 3) *Bivens* claims against Defendant Williams. (*Id.* ¶¶ 58–71, 84–96.)

The Supreme Court established an implied private right of action for tortious deprivation of constitutional rights against federal officials in their personal capacity in only three contexts. First, in *Bivens,* the Supreme Court held that a plaintiff alleging to have been subject to an unlawful arrest and search could bring a Fourth Amendment claim for damages against federal agents, even though no federal statute authorized such a claim. *Bivens*, 403 U.S. at 396; *see also Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). Then, in *Davis v. Passman*, the Court held that the Fifth Amendment Due Process Clause gave the plaintiff, a former congressional staffer, a damages remedy for gender discrimination when no alternative remedy existed. 442 U.S. 228, 248 (1979). In *Carlson v. Green,* the Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause gave decedent's estate a damages remedy when federal jailers failed to treat decedent's asthma, resulting in his death. 446 U.S. 14, 25 (1980).

Expanding the *Bivens* remedy beyond these three scenarios is a "disfavored" judicial activity. *Iqbal*, 556 U.S. at 675; *see also Chambers v. C. Herrera*, 78 F.4th 1100, 1104 (9th Cir. 2023) ("[T]he Court recently issued a trilogy of cases reinforcing said disfavor.") (citing *Egbert v. Boule*, 596 U.S. 482, 484 (2022); *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020); and *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). The Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). When deciding whether to provide a damages remedy, "Congress is in a better position [than the courts] to decide whether or not the public interest would be served" by imposing a "new substantive legal liability." *Schweiker v. Chilicky*, 487 U.S. 412, 426–27 (1988) (quoting *Bush v. Lucas*, 462 U.S. 367, 390 (1983)).

The Court addresses each of Plaintiff's three *Bivens* claims by proceeding in two steps. "First, we ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 1849). Second, if a case presents a new *Bivens* context, then the Court examines whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 1854). These steps will "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* "In practice, the Supreme Court's stringent test will foreclose relief in all but the most extraordinary cases." *Marquez v. C. Rodriguez*, 81 F.4th 1027, 1030 (9th Cir. 2023).

### a. Eighth Amendment – Failure to Protect (Count 1)

In the SAC, Plaintiff alleges that Defendant Williams and BOP Officers acted with deliberate indifference to substantial risk of physical assault in violation of the Eighth Amendment by subjecting Plaintiff to dangerous conditions of confinement and violating her right to safe and humane confinement. (SAC ¶¶ 58–71.) Williams argues that the claim must be dismissed because the Ninth Circuit found that a *Bivens* cause of action may not

be found on allegations of failure to protect under the Eighth Amendment. (Doc. No. 49 at 9, 11–12 (citing *Chambers*, 78 F.4th at 1105; *Marquez*, 81 F.4th at 1030–31).) Plaintiff does not dispute Defendant Williams' assertion, and instead responds that Williams is liable for failure to protect under the Fourteenth Amendment's Due Process Clause. (Doc. No. 51 at 4–5.)

The Ninth Circuit has declined to extend a *Bivens* action to failure-to-protect claims brought under the Eighth Amendment, *Chambers*, 78 F.4th at 1105, and the Fifth Amendment, *Marquez*, 81 F.4th at 1028. In *Chambers*, the Ninth Circuit held that a failure-to-protect claim brought by a plaintiff alleging assault by a federal prison guard represented a new *Bivens* context because "it is distinct from the three actions recognized in *Bivens*, *Davis,* and *Carlson*." *Chambers,* 78 F.4th at 1107. The Ninth Circuit reasoned that extending *Bivens* to an Eighth Amendment failure-to-protect claim "would interfere with the administration of the federal prison system" that offered prisoner grievance procedures that the plaintiff elected not to use. *Id.* It also "decline[d] to craft an action for damages when Congress could have done so but did not." *Id.* at 1108.

Similarly, in *Marquez*, the Ninth Circuit rejected extending *Bivens* to a pretrial detainee's failure-to-protect claim under the Fifth Amendment for suffering injuries after being denied protective custody. 81 F.4th at 1032–33. There, the Ninth Circuit found that the claim involved a new *Bivens* context in part because the plaintiff, a pretrial detainee, was temporarily held in jail, whereas the Supreme Court only previously considered *Bivens* claims brought by convicted individuals in prison. *Id.* at 1032. The Ninth Circuit determined the "difference in setting . . . significant." *Id.* Additionally, the Ninth Circuit established that special factors counseled against extending *Bivens* because the plaintiff had remedies available other than a *Bivens* claim, including BOP administrative review procedures, as well as declaratory or injunctive relief. *Id.* at 1033.

The present case is analogous to both *Chambers* and *Marquez*. First, like in *Chambers* and *Marquez*, Plaintiff's claim involves a new *Bivens* context. The failure-to-protect claim "is distinct from the three actions recognized in *Bivens*, *Davis,* and *Carlson*,"

*Chambers*, 78 F.4th at 1107, none of which involved a failure-to-protect claim. Additionally, like the plaintiff in *Marquez,* the Plaintiff here was a pretrial detainee at the time of the alleged brain bleed and assault, and not a prisoner. *Marquez*, 81 F.4th at 1032. Second, the special factors in *Chambers* equally apply here: 1) Plaintiff does not allege that she used any of the BOP administrative procedures to address her grievance, and 2) the Court will not extend an action for damages where "Congress could have done so but did not." *Chambers,* 78 F.4th at 1107–08. While Plaintiff cites to *Farmer v. Brennan*, 511 U.S. 825, 825 (1994) in support of holding a prison official liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety, the Ninth Circuit recently held that "*Farmer* is not a recognized *Bivens* context." *Marquez*, 81 F.4th at 1030 (citing *Ziglar*, 582 U.S. 120 (2017) (*Bivens, Davis,* and *Carlson* "represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution itself.")).

Plaintiff's attempt to amend the SAC in her opposition brief to allege a failure-to-protect claim in violation of the Fourteenth Amendment fares no better. First, the SAC does not mention the Fourteenth Amendment and amending a claim in an opposition brief to a motion to dismiss is improper. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), [r]eview is limited to the complaint.") (internal quotation marks and citation omitted). Second, Defendants Williams, as warden of MCC, and BOP Officers were federal employees at the time the events in this case occurred. (Doc. No. 49 at 7.) It is well-settled law that "actions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment." *D.C. v. Carter*, 409 U.S. 418, 424 (1973); *see also Hall v. Mueller,* 84 F.App'x 814, 815 (9th Cir. 2003) (affirming dismissal of Fourteenth Amendment claims against individual defendants because the Fourteenth Amendment "do[es] not apply to federal government actors.") Accordingly, a Fourteenth Amendment claim brought against Defendants Williams and BOP Officers fails as a matter of law and amending the operative complaint to include such a claim would be futile.

As in *Chambers* and *Marquez*, because Plaintiff does not state a failure-to-protect claim under the Eighth Amendment, the Court **GRANTS** Defendant Williams's motion to dismiss Plaintiff's *Bivens* failure-to-protect claim. *See* Fed. R. Civ. P. 8, 12(b)(6). Further, because Plaintiff has not raised additional facts or argument to support a viable failure-to-protect claim against Defendants Williams or BOP Officers, the Court finds amendment would be futile. Accordingly, the Court **DISMISSES** the purported failure-to-protect claim against Defendants Williams and BOP Officers **WITHOUT LEAVE TO AMEND**. *See* Fed. R. Civ. P.12(b)(6); *see Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend where the amendment would be futile.").

### b. Eighth Amendment – Excessive Force (Count 2)

Plaintiff's second cause of action alleges a *Bivens* claim for excessive force in violation of the Eighth Amendment. (SAC ¶¶ 72– 83.) Plaintiff alleges that BOP Officers' "assault and battery upon Ms. Young on January 29, 2020, by kicking her, was unauthorized, unlawful, and applied maliciously and sadistically to cause Ms. Young physical injury and done while she was in medical peril." (*Id.* ¶ 79.) Williams argues that Plaintiff's second cause of action should be dismissed because the Ninth Circuit has declined to extend a *Bivens* remedy to Eighth Amendment excessive force claims. (Doc. No. 49 at 12 n. 1.) The Court agrees.

In *Chambers,* the Ninth Circuit found that under *Egbert,* "even plausible allegations could not constitute a *Bivens* claim for excessive force[.]" 78 F.4th at 1107; *see also Williams v. Baker*, No. 116CV01540ADAHBK, 2023 WL 7323332, at *4 (E.D. Cal. Nov. 7, 2023), report and recommendation adopted, No. 1:16-CV-01540-NODJ-HBK (PC), 2024 WL 1333172 (E.D. Cal. Mar. 28, 2024), appeal dismissed, No. 24-3525, 2024 WL 4063618 (9th Cir. June 20, 2024) ("[B]inding Ninth Circuit case law now holds that under *Egbert*, this Court may not extend a *Bivens* remedy to an Eighth Amendment excessive use of force claim.") The Ninth Circuit determined that an Eighth Amendment *Bivens* claim "rooted in excessive force" "represents a new *Bivens* context because it is distinct from the

three actions recognized in *Bivens*, *Davis*, and *Carlson*." *Id.*; *see also Hunt v. Matevousian*, No. 18-17464, 2023 WL 8064536, at *1 (9th Cir. Nov. 21, 2023) ("The district court properly dismissed [plaintiff's] Eighth Amendment claims for excessive force and failure to protect because a *Bivens* remedy is unavailable for such claims.") Further, the Ninth Circuit identified special factors that foreclosed a *Bivens* excessive force claim by stating, "[b]ecause *Carlson* involved an entirely different claim, it provides no judicial guidance on how prison officials should handle excessive force claims" and "to expand *Bivens* here would risk the exact 'disruptive intrusion by the Judiciary' that *Ziglar* forecloses." *Chambers*, 78 F.4th at 1108 (quoting *Ziglar*, 582 U.S. at 140).

Plaintiff's reliance on *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) for the appropriateness of a pretrial detainee's excessive force claim is also inapposite because there, the pretrial detainee brought a Section 1983 action for excessive force against county jail officers, alleging that they used excessive force in violation of his Fourteenth Amendment rights. As stated above, neither the Fourteenth Amendment nor Section 1983 applies to individual federal government actors. *See Hall*, 84 F. App'x at 815–16. Because neither the Supreme Court nor the Ninth Circuit have recognized a *Bivens* remedy for an Eighth Amendment excessive force claim, and amendment would be futile, the Court **DISMISSES** the *Bivens* excessive force claim against BOP Officers **WITHOUT LEAVE TO AMEND**. *See Chambers,* 78 F.4th at 1107 ("Because even plausible allegations could not constitute a *Bivens* claim for excessive force under *Egbert,* it is absolutely clear that amendment would be futile.") (internal quotation marks and citation omitted); *see also Saul*, 928 F.3d at 843.

### c. Eighth Amendment – Deliberate Indifference to Serious Medical Needs (Count 3)

Plaintiff's final *Bivens* claim is for deliberate indifference to serious medical needs under the Eighth Amendment. (SAC ¶¶ 84–96.) Plaintiff alleges that Defendants Williams and BOP Officers knew or should have known of Plaintiff's seizure condition, including that it required medication and medical care, which was not provided to Plaintiff, and that

Williams and BOP Officers failed to provide Plaintiff with adequate treatment for her head injuries sustained on January 29, 2020, when she fell from her top bunk following a seizure. (*Id.*) Williams argues that this claim should be dismissed because 1) Plaintiff's deliberate indifference claim is conclusory, 2) Plaintiff does not allege that Williams was personally involved in the alleged constitutional violations, and vicarious liability is inapplicable to *Bivens* suits, 3) Plaintiff was a pretrial detainee at the time of the alleged events, rather than a convicted inmate, so her claims are properly raised under the Fifth Amendment, not the Eighth Amendment, and 4) Plaintiff had alternative remedies other than bringing a *Bivens* claim. (Doc. No. 49 at 12–13.) Plaintiff responds that she adequately plead her deliberate indifference to medical needs claim and that Williams is liable under both the Eighth and Fourteenth Amendments. (Doc. No. 51 at 4, 6.)

Plaintiff does not dispute that the Eighth Amendment protects adequate medical care for prisoners, but not pretrial detainees. (Doc. No. 51 at 5); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (claims by federal pretrial detainees "properly rel[y] on the Due Process Clause [of the Fifth Amendment] rather than the Eighth Amendment"). Instead, Plaintiff argues that pretrial detainees are guaranteed adequate medical care under the Fourteenth Amendment's Due Process Clause. (*Id.*) However, Plaintiff cannot amend the SAC in her opposition brief to state a new claim under the Fourteenth Amendment, *Lee*, 250 F.3d at 688, and the Fourteenth Amendment does not apply to individual federal government actors, *Hall*, 84 F. App'x at 815–16. Accordingly, on these bases, the Court **DISMISSES** Plaintiff's third cause of action **WITH LEAVE TO AMEND**. Considering leave should be freely given and amendment may not be futile, the Court **GRANTS** Plaintiff leave to amend the SAC so Plaintiff may bring a deliberate indifference to serious medical needs claim under the Fifth Amendment. *See* Fed. R. Civ. P. 15(a); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) ("[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."). To avoid dismissal, Plaintiff must ensure any third

amended complaint contains factual allegations showing a violation of clearly established law. *See* Fed. R. Civ. P. 8, 12.

### B. Negligence

Plaintiff alleges a claim of negligence against Defendants GEO and GEO Officers for disregarding the safety of Plaintiff, failing to follow GEO's policies and procedures, delaying providing medical attention to Plaintiff, and negligently hiring, training, developing, managing, and supervising GEO Officers. (SAC ¶ 99.) Plaintiff brings the claim against GEO Officers with *respondeat superior* liability for GEO. (*Id.* ¶¶ 114–15.) Defendant GEO argues that Plaintiff fails to adequately plead causation or harm elements to state a claim for negligence. (Doc. No. 48 at 3–4.)

The Court agrees with Defendants.[2] As an initial matter, Plaintiff admits that the negligence count in the SAC "inaccurately states Federal Bureau of Prisons" when she intended to refer to the GEO. (*Id.*) However, the Court cannot assume facts not alleged. *See Assoc. Gen. Contractors of California, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged."). Even had the SAC referenced GEO rather than the Federal Bureau of Prisons, the SAC does not contain sufficient specificity or facts to state a claim for negligence. For instance, Plaintiff broadly alleges delays in receiving medical attention, but does not plead the specific harm she suffered due to the delays. (SAC ¶¶ 97–103.) Further, Plaintiff does not connect any negligence in hiring, training, developing, managing, or supervising GEO Officers with any specific harm. (*Id.*) Finally, while Plaintiff alleges that GEO "[f]ailed to follow policies and procedures contained in the Defendant GEO's Policies and Procedures Manual," amongst other policies, (*id.* ¶ 99(d)), Plaintiff does not identify how GEO Officers failed to adhere to the policies, or whether

---

[2] The Court does not agree with Defendant GEO's contention that "the only causation of harm or injury alleged in the [SAC] is Plaintiff's allegation that while in federal custody at MCC, she fell off her top bunk to the floor on January 29, 2020 . . . ." (Doc. No. 48 at 2.) Plaintiff also alleges that GEO Officers' repeated act of "banging [an orange mallet] on the cell bars . . . caused her severe pain and discomfort[.]" (SAC ¶¶ 50–51.)

she experienced harm as a result. (*Id.*) Accordingly, the Court **GRANTS** Defendant GEO's motion to dismiss Plaintiff's negligence claim **WITH LEAVE TO AMEND**. *See* Fed. R. Civ. P.12(b)(6).

Considering leave should be freely given and amendment may not be futile, the Court **GRANTS** Plaintiff leave to amend the SAC to cure the deficiencies with respect to the claims against GEO and GEO Officers. *See* Fed. R. Civ. P. 15(a); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) ("[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.").

### C. Intentional Infliction of Emotional Distress

Plaintiff alleges a claim of Intentional Infliction of Emotional Distress ("IIED") against Defendant GEO Officers for "using an orange mallet to hit the bars of the cells yelling 'free headaches[,]' causing Ms. Young extreme pain and stress." (SAC ¶¶ 51, 105.) Plaintiff alleges the GEO Officers engaged in such behavior daily for the sixteen days Plaintiff was in custody at GEO's Western Regional Detention Facility from February 10, 2020, until February 26, 2020, following Plaintiff's brain surgery. (*Id.* ¶ 50.) Plaintiff alleges that she "begged" the GEO Officers to stop, but they responded that "headaches were funny." (*Id.* ¶ 51.) As a result of GEO Officers' actions, Plaintiff alleges "sustain[ing] severe, serious and permanent injuries to her person. . . ." (SAC ¶ 107.) Plaintiff brings the claim against GEO Officers with *respondeat superior* liability for GEO. (*Id.* ¶¶ 114–15.)

Defendant GEO argues that Plaintiff's allegations are insufficient to show outrageous conduct, (Doc. No. 48 at 6–7), and further asserts that GEO cannot be liable under *respondeat superior* where Plaintiff does not name the officer(s) who allegedly engaged in the conduct, (*id.* at 7), and where the alleged conduct falls outside the scope of the GEO Officers' employment. (Doc. No. 57 at 3.) Plaintiff counters that the GEO Officers' conduct was outrageous and their alleged reference to "free headaches" demonstrates that their conduct was directed at Plaintiff and her medical condition following brain surgery. (Doc. No. 52 at 4.)

A claim for IIED requires a prima facie showing of "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996). For the conduct to be considered outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cervantez v. J.C. Penny Co.*, 24 Cal. 3d 579, 593 (1979), *overturned on other grounds by legislative action*, Cal. Penal Code § 243. "Under California's law of respondeat superior, employers are liable for acts of their employees occurring within the scope of their employment." *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1163 (9th Cir. 2005). "[E]ven tortious conduct that violates an employee's official duties or disregards the employer's express order may nonetheless be within the scope of employment." *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) (internal quotation marks and citation omitted).

Here, Plaintiff adequately pleads an IIED claim. First, perhaps in recognition that Plaintiff alleges outrageous conduct, Defendant GEO concedes that Plaintiff's "allegations are preposterous." (Doc. No. 48 at 7 n.3.)[3] Plaintiff alleges she notified the GEO Officers that she "just had brain surgery," (SAC ¶ 51), yet they allegedly persisted to bang their mallets on the cell bars, creating noise that led Plaintiff to experience severe pain and discomfort. (*Id.* ¶¶ 51, 56.) Second, the facts alleged suggest that the GEO Officers engaged in outrageous conduct while working in "the halls" of their place of employment, (SAC ¶ 50), so a question of whether the GEO Officers were acting within their scope of employment remains, which need not be addressed at the motion to dismiss stage. *Gurrola v. Jervis*, No. CV 08-8029-GW JTLX, 2009 WL 9548218, at *10 (C.D. Cal. Apr. 2, 2009) ("[W]hether or not [employee] was acting within the course and scope of his employment would appear to be a fact question better left for the summary judgment stage[.]")

---

[3] At the motion to dismiss stage, a court must take all of the factual allegations in a complaint as true. *See Ashcroft*, 556 U.S. at 678.

Accordingly, Plaintiff has adequately pled an IIED claim and Defendant GEO's motion to dismiss the IIED claim is **DENIED**.

### D. Bane Act

Plaintiff's sixth cause of action against all Defendants alleges violations of California's Bane Act. The Bane Act, California Civil Code § 52.1, provides for a claim against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state. . . ." The Bane Act does not require that a "threat, intimidation or coercion" be "independent" from the threats, intimidation, or coercion inherent in the underlying constitutional or statutory violation. *See Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017); *see also Craig v. Cty. of Santa Clara*, No. 17-CV-02115-LHK, 2018 WL 3777363, at *19 (N.D. Cal. Aug. 9, 2018). While the Bane Act does not apply to underlying negligence claims brought about by human error, *see Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), alleged intentional conduct violating a constitutional or statutory right "which could be reasonably perceived as threatening, intimidating, or coercive" is sufficient to state a Bane Act claim. *See Skeels v. Pilegaard*, No. C12-2175 TEH, 2013 WL 970974, at *4 (N.D. Cal. Mar. 12, 2013); *see also M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) ("[A]t the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and that *Shoyoye* applies only when the conduct is unintentional.") Both government actors and private actors may be held liable under the Bane Act. *See e.g. Van v. Wal-Mart Stores, Inc.*, 583 F. App'x 761, 763 (9th Cir. 2014) (Plaintiff sufficiently pled Bane Act claim against Wal-Mart security guards).

Because Plaintiff has not adequately pled that Defendants Williams and BOP Officers interfered with any state or federal statutory or constitutional rights in an underlying violation, the Court **DISMISSES** Plaintiff's Bane Act claim against Defendants Williams and BOP Officers **WITH LEAVE TO AMEND**. *See Cravotta*, 717 F. Supp. 3d

at 965 (dismissing Bane Act claim against defendants where Plaintiff failed to sufficiently plead deliberate indifference claim against defendants).

Similarly, Plaintiff does not plead an underlying constitutional or statutory violation against Defendant GEO Officers that implicate Plaintiff's civil rights. Indeed, "the Bane Act is not intended to be just a codification of intentional tort law; it is designed to provide redress when an 'underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief.'" *Rodriguez v. Cnty. of Los Angeles*, 654 F. Supp. 3d 1029, 1053 (C.D. Cal. 2023) (quoting *Cornell*, 17 Cal. App. 5th at 800)). Accordingly, the Court **DISMISSES** Plaintiff's Bane Act claim brought against Defendants GEO Officers **WITH LEAVE TO AMEND**.

Considering leave should be freely given and amendment may not be futile, the Court **GRANTS** Plaintiff leave to amend the SAC to cure the deficiencies with respect to the Bane Act claim against all Defendants. *See* Fed. R. Civ. P. 15(a); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) ("[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.").

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss. (Doc. Nos. 48, 49.) Plaintiff's Eighth Amendment claims against Defendant Williams and BOP Officers for failure to protect (Count 1) and excessive force (Count 2) are **DISMISSED WITHOUT LEAVE TO AMEND**. Plaintiff's Eighth Amendment claim against Defendant Williams and BOP Officers for deliberate indifference to serious medical needs is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff's Bane Act (Count 6) claim against Defendants Williams and BOP Officers is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff's negligence (Count 4) and Bane Act (Count 6) claims against Defendants GEO and GEO Officers are dismissed **WITH LEAVE TO AMEND**. Defendant GEO's motion to dismiss Plaintiff's IIED claim (Count 5) is **DENIED**.

Should Plaintiff wish to amend her complaint, she must file a Third Amended Complaint, along with a redlined version, no later than **January 21, 2025**. In the interest of a clear record, the Court **ORDERS** all remaining Defendants (including those that have previously filed an Answer) to file their responsive pleading to any Third Amended Complaint, no later than **February 10, 2025**. *See generally KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 715 (9th Cir. 2020) (indicating that a defendant should file a new answer to an amended complaint where the amendment "change[s] the theory or scope of the case.").

**IT IS SO ORDERED**.

Dated: January 6, 2025

Hon. Anthony J. Battaglia
United States District Judge