Michelle Cameron-Hunsaker (SBN 286143)
HUNSAKER LAW
8880 Rio San Diego Dr.
San Diego, CA 92108
Telephone: (619) 786-4016
Facsimile: (619) 821-8882
Email: mchsdlaw@gmail.com


Attorneys for Plaintiff
MELISSA YOUNG

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELISSA YOUNG, an individual<br><br>                              Plaintiff,<br><br>        v.<br><br>LOUIS WILLIAMS, II; THE GEO GROUP, INC., a Florida corporation; JOHN and/or JANE DOES 1-15, Correctional Officers and Staff of the Federal Bureau of Prisons; and JOHN and/or JANE DOES 16-30, corrections officers and staff at the GEO GROUP, INC.<br><br>                              Defendants | CASE NO.  22-cv-00125-AJB-KSC<br><br>THIRD AMENDED COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED<br><br>**THIRD AMENDED COMPLAINT FOR:**<br>　　**(1) Fifth Amendment Due Process Violation – Deliberate Indifference to Serious Medical Needs**<br>　　**(2) BANE ACT. (CCP Sec. 52.1)**<br>　　**(3) Intentional Infliction of Emotional Distress (California State Law)**<br>　　**(4) Negligence** |

Plaintiff Melissa Young ("Plaintiff"), by and through her counsel Michelle Cameron-Hunsaker, hereby alleges the following:

///

///

///

## JURISDICTION AND VENUE

1. This case is brought pursuant to violations of Plaintiff's Fifth Amendment right to Due Process. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

2. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to consider her state law claims.

3. Venue is proper in the Southern District of California because all of the events complained of and giving rise to Plaintiff's claims occurred in this District. *See* 28 U.S.C. §§ 1391(b)(2) and 28 U.S.C. 1402(b).

## PARTIES

4. Between January 24, 2020, and February 3, 2020, Plaintiff Melissa Young (Res. No. 91626-298) was in pretrial custody at the Bureau of Prisons (hereinafter referred to as "BOP"), Metropolitan Correctional Center San Diego ("MCC San Diego") awaiting trial.

5. Between February 7, 2020, and February 26, 2020, Ms. Young was in pretrial custody at the GEO Group, a federal contractor.

6. The Federal BOP employed defendant, Louis Williams, II as the warden at MCC San Diego.

7. Plaintiff is unaware of the true name and capacity, whether individual or otherwise, of Defendants John or Jane Doe 1-15, who are BOP correctional officers and staff, and therefore sues these Defendants by fictitious names.

8. Plaintiff is unaware of the true name and capacity, whether individual or otherwise, of Defendants John or Jane Doe 16-30, who are GEO correctional officers and staff, and therefore sues these Defendants by fictitious names.

9. At all times relevant to the Complaint, Defendants John or Jane Doe 1-15 acted individually and within the scope and course of their employment with the BOP.

10. At all times relevant to the Complaint, Defendants John or Jane Doe 16-30 acted individually and within the scope and course of their employment with GEO.

11. The Federal BOP is an agency within the United States Department of Justice ("DOJ"). The BOP runs the MCC San Diego located in San Diego, California. BOP has entered an appearance, and may be served through its counsel of record, Erin M. Dimbleby, UNITED STATES DEPARTMENT OF JUSTICE, erin.dembleby@usdoj.gov, 880 Front Street, Suite 6293, San Diego, CA 92101.

12. Defendant THE GEO GROUP, INC. (hereinafter referred to as "GEO") is a foreign corporation organized and existing under the laws of the State of Florida and authorized to do business in the State of California. GEO has entered an appearance, and may be served through its counsel of record, Susan E. Coleman, BURKE, WILLIAMS & SORENSEN, LLP, scoleman@bwslaw.com, 444 South Flower Street, Suite 2400 Los Angeles, CA 90071-2953.

13. Plaintiff will amend this Complaint to allege the true names and capacities of Defendants John or Jane Doe 1-30 when they have been ascertained.

## JURY DEMANDED

14. Plaintiff demands a trial by jury in this action for all claims for which it is available.

## GENERAL ALLEGATIONS

15. Ms. Young was taken into custody by the Chula Vista Police Department on or about November 17, 2019. She had her first seizure while in the custody of Chula Vista Police Department on November 17, 2019. She was taken to Scripps Chula Vista Emergency Room where she was treated, stabilized, and then released into the custody of the US Marshall's Service and transported to The GEO Group's, Western Region Detention Facility.

16. Defendant GEO operates the Facility pursuant to a contract with the US Marshalls Service (and any supplemental agreements or modifications thereto).

Defendant GEO was responsible for the training, supervision, management, and conduct of the officers working in the Facility. However, GEO failed to train any of its personnel to identify and appropriately respond to inmates who were in urgent need of medical care, nor did they institute appropriate policies and procedures regarding the same. GEO further failed to train or supervise its personnel to ensure that persons with disabilities and/or injuries are provided proper housing, medical care and appropriately care for the medically disabled in general population.

17. Defendant GEO is required to follow certain policies and procedures in the operation of the Facility, which specifically include, but are not limited to, the Federal Bureau of Prisons and the standards and guidelines set forth in the Federal Administrative Code.

18. Ms. Young was initially housed in the medical unit and provided medication pursuant to the aftercare required by Scripps' discharge instructions. However, after two days she was moved to general population where she stayed until she was given bond and released on the same on December 4, 2019. During this portion of her time in GEO, the facility provided to Ms. Young her medications without issue.

19. Ms. Young's Pretrial Services Officer determined that she would benefit from a residential drug treatment program, and it was ordered as a term of her bond. She entered into CRASH Golden House on or about December 4, 2019. Ms. Young continued to receive her medication with CRASH.

20. Ms. Young was discharged from CRASH on January 23, 2020, and reported to Pretrial Services on January 24, 2020. She was transported by US Marshals to MCC San Diego.

21. Over the course of only one month January 24, 2020, to February 26, 2020, Ms. Young experienced firsthand the neglect of duties, violence and poor treatment that has given BOP and GEO their reputations.

22. When Ms. Young arrived at MCC San Diego on or about January 24, 2020, she was in pretrial trial custody awaiting her case with Southern District of California Court to proceed. She entered Federal BOP custody that day believing that she would be free from harm and would leave in a condition that would be the same or similar as when she was taken into custody.

23. Ms. Young was twenty-eight years old at the time, she was in recovery from a long-term addiction, and she was suffering from undiagnosed seizure condition. Before her arrest, she was a care giver to her grandmother until she passed and a care giver to her elderly parents.

24. Despite already being on notice of her medical condition, Ms. Young was assigned to the top bunk in the BOP's MCC San Diego's general population. She immediately notified the correction officer that she needed to be on a bottom bunk due to her seizures. She was ignored and assigned the top bunk despite the request and warning that was given.

25. Ms. Young requested to go to medical to get her prescribed medications. She was instructed to fill out the form in order to see medical. She did as requested on January 24, 2020.

26. Ms. Young repeatedly requested to see medical and to receive her medications over the span of 5 days. She was merely asked whether she filled out the forms and told to wait. She never saw medical.

27. On January 29, 2020, Ms. Young still had not been seen by medical or received her prescription medications. She was feeling ill and asked the corrections officer again to be seen by medical and she was ignored. She proceeded to go to her bunk and lay down. At which point she had a seizure and toppled from her top bunk to the cement floor below.

28. The other inmates, rushed to get the corrections officer's attention to provide medical care and transport. They were met by hesitation and allegations that Ms. Young had to be faking it.

29. When finally, the corrections officer arrived to assist, Ms. Young was on the floor continuing to seize until she became unresponsive. At this point one officer just kicked Ms. Young while she was in medical peril, while others merely watched.

30. The inmates immediately began calling Ms. Young's family when BOP staff refused to help Ms. Young. Family members called BOP's facility. Ms. Young's defense attorney was called and immediately reached out to BOP's facility to get Ms. Young immediate medical care.

31. Ms. Young was fortunate that the women in her unit cared enough to stand up to the staff and demand that Ms. Young get care, and enlisted outside forces to intervene because the requests fell on deaf ears.

32. Ms. Young was transported to UC San Diego Hospital where she underwent an emergency brain surgery due to a brain bleed, she had sustained from the fall. She had half of her head shaved, her head cut open, and resealed with large metal staples.

33. Ms. Young woke up a couple days later post-surgery, scared and confused. She requested to call her family, but her request was laughed off by the U.S Marshall.

34. Ms. Young was transported back to BOP custody on February 3, 2020, and yet again assigned to the top bunk in general population. One of the women in the unit, switched with Ms. Young so as to avoid further injury. Again, an inmate took more precaution and care with Ms. Young than BOP staff.

35. The federal regulation governing BOP correctional officers' use of force, 28 C.F.R. § 552.20, states the following:

> "The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others,

to prevent serious property damage and to ensure institution security and good order."

36. Defendants John or Jane Doe 1-15 failed to use all other reasonable efforts to resolve the situation before they used force on Ms. Young while she was housed in BOP custody.

37. Defendants John or Jane 1-15 instead used excessive amounts of force on Ms. Young, who was experiencing a medical or mental health emergency and needed assistance when she was housed in BOP custody.

38. Defendants John or Jane Doe 1-15 failed to obtain a camera and record any of the events leading to Ms. Young's injuries while she was in BOP custody.

39. Defendant Williams and Defendants Officers John or Jane Doe 1-15 all knew of and disregarded an excessive risk to Ms. Young's health but also caused the risk and continued to do so in the face of obvious evidence that they were causing serious harm while she was housed in BOP custody.

40. Defendant Williams tolerated and fostered an environment of disorganization within the facility, including the failure to properly staff the unit, hire competent staff personnel, supervise, and train its correctional officers and ensure that injured inmates were screened, assessed, and provided medical treatment in a timely manner. Defendant Williams took no effective measures to protect Plaintiff and to ensure her safety, including, but not limited to, conduct the appropriate prisoner health assessment and/or a medical evaluation.

41. Defendant Williams and John or Jane Doe 1-15 failed to initiate appropriate and necessary medical interventions and to transport Plaintiff to an appropriate medical facility in a timely fashion. The delays occasioned by Defendant Williams and John or Jane Doe 1-15 proximately caused the brain bleed requiring surgery.

42. The conduct to which Ms. Young was subjected violated both federal criminal law and her federal Constitutional and statutory rights under the Fifth Amendment and the California Constitution.

43. The conduct gives rise to causes of action for violations of the United States' Constitution's Fifth Amendment and California's Tom Bane Act.

44. On February 5, 2020, Ms. Young was again granted pretrial release to CRASH Golden House II. Intake Coordinators received new medications and stated they would take her to medical appointments due to surgery including removal of staples in her head from surgery.

45. On February 6, 2020, Ms. Young was not feeling well and began to taste copper in her mouth (UCSD release paperwork and her surgeon provided Ms. Young with the information that a copper taste is warning prior to seizure.) She requested to go to the ER. She was told by CRASH staff that pretrial had medically cleared her and thus there was no rush to get her to medical services. After several hours of waiting, Ms. Young determined that she had to obtain her own medical care as CRASH staff was failing to do so. She called her sister, who took her to Sharp Chula Vista Emergency Room around 10:00 am on February 6, 2020. She was admitted and kept for observation until 4:00 am on February 7, 2020.

46. Ms. Young was then transferred to UCSD to be seen by their neurology department, where her brain surgery had been done, for a follow up. She was discharged at around 2:00 pm on February 7, 2020.

47. From UCSD, Ms. Young went directly to Pretrial Services and self-surrendered.

48. Ms. Young was taken into custody and placed at GEO's medical unit on February 7, 2020. She remained in medical until February 10, 2020.

49. On or about February 10, 2020, Ms. Young was placed back in general population. GEO and Does 16-30 were all aware of Ms. Young's seizure condition and the fact that she had had brain surgery due that the fact that BOP provides

relevant information to GEO on persons who are placed in their care and as evidenced by the shaved head and staples.

50. From February 10, 2020, until her release February 26, 2020, the GEO Corrections Officers would daily take an orange mallet and walk down the halls banging it on the cell bars yelling "free headaches."

51. Ms. Young begged them to stop and again put them on notice that she had just had brain surgery - the response was that headaches were funny. This caused her severe pain and discomfort and requests for it to cease were literally laughed off and ignored. There was only one exception, Ms. Maggie, who determined that Ms. Young's pain was valid.

52. Ms. Young struggled at GEO to get her medication and to see medical. Requests were brushed off or refused. It took outside intervention, from family and her attorney to get her the necessary care that should have been easily provided. She went without her medications for no less than a week after being released from medical while in GEO's custody the second time (2/10/20 to 2/26/20) subjecting her to potential further seizures.

53. Ms. Young was again granted pretrial release to KIVA (another residential treatment program) on February 26, 2020.

54. Defendants John or Jane Doe 16-30 knew of and disregarded an excessive risk to Ms. Young's health by failing to provide medical care and prescribed medications but also caused the risk and continued to do so in the face of obvious evidence that they were causing serious harm while she was housed at GEO.

55. Defendant GEO tolerated and fostered an environment of disorganization within the facility, including the failure to properly staff the unit, hire competent staff personnel, supervise, and train its correctional officers and ensure that injured inmates were screened, assessed, and provided medical treatment in a timely manner. Defendant GEO took no effective measures to protect Plaintiff and to

ensure her safety, including, but not limited to, conduct the appropriate prisoner health assessment and/or a medical evaluation.

56. Defendants Does 16-30 knew of Ms. Young's medical condition and intentionally acted in a way to harm her by taunting and subjecting her to unnecessary and intentionally offensive noise.

57. Ms. Young's injuries while in the custody of BOP and GEO as a result of Defendants callous inaction and despicable actions were preventable. Defendants' actions were inhumane, contrary to BOP and GEO policy, and violated Ms. Young's constitutional and statutory rights. Plaintiff now brings this suit to hold Defendants responsible for their outrageous and unlawful treatment.

## **FIRST CAUSE OF ACTION**
Fifth Amendment Due Process Violation –
Deliberate Indifference to Serious Medical Needs
(Against Defendant Williams and John or Jane Doe 1-15)

58. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

59. On or about January 24, 2020, Ms. Young entered the custody of the MCC San Diego, a facility operated under the authority of the BOP.

60. At the time of her intake, Ms. Young had a known seizure condition requiring prescribed medication. Despite this, Defendants assigned her to a top bunk in the general population—a decision that directly disregarded her medical condition and posed a substantial risk of harm.

61. Despite multiple written and verbal requests for her prescribed seizure medication and appropriate medical care, Defendants John or Jane Doe 1-15, under the authority of Defendant Williams at MCC San Diego, failed to provide her access to medical care or medication for five days.

62. On January 29, 2020, as a direct result of Defendants' decisions, Ms. Young suffered a violent seizure, fell from the top bunk onto a cement floor, and sustained a traumatic brain injury.

63. Defendants knew or should have known that placing a seizure-prone inmate in a top bunk and denying her medication for several days created a substantial risk of serious harm, yet they failed to take corrective action.

64. When Ms. Young suffered her seizure and fell from her bunk, Defendants initially dismissed the emergency as "faking it" and refused to call for emergency medical intervention.

65. Even after Ms. Young was rendered unconscious following the seizure, officers failed to provide prompt medical attention, and one officer kicked her while she was on the ground seizing, instead of securing emergency medical aid.

66. Ms. Young ultimately required emergency brain surgery at UC San Diego Hospital due to a brain bleed caused by her fall—an injury that would not have occurred had Defendants taken appropriate steps to prevent harm.

67. A reasonable correctional officer in Defendants' position would have recognized that:

    (a) Placing a seizure-prone inmate in a top bunk posed a direct danger.

    (b) Denying a seizure-prone inmate her prescribed medication for five days posed an obvious and serious risk of harm.

    (c) Ignoring repeated medical requests and refusing medical care post-seizure demonstrated deliberate disregard for an inmate's health and safety.

68. The BOP's own 28 C.F.R. § 552.20 mandates that force may only be used as a last alternative, and yet officers chose to physically assault Ms. Young while she was in a medical emergency instead of providing care.

69. Following her emergency surgery, Defendants again placed her in a top bunk, ignoring medical recommendations and subjecting her to continued risk.

70. As a direct and proximate result of Defendants' deliberate indifference, Ms. Young suffered:

(a) A traumatic brain injury requiring emergency brain surgery.

(b) Severe physical pain and suffering, including untreated post-surgical complications.

(c) Emotional distress, fear, and psychological trauma from both neglect and abuse by staff.

(d) Increased vulnerability to future seizures and medical complications due to untreated conditions while in custody.

71. Ms. Young's injuries and suffering were entirely preventable had Defendants provided even minimal medical attention or taken reasonable precautions to ensure her safety.

## SECOND CAUSE OF ACTION
BANE Act Violation
(Against Defendant Williams and John or Jane Doe 1-15)

72. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

73. The Tom Bane Civil Rights Act, codified at California Civil Code § 52.1, prohibits any person, whether acting under color of law or not, from interfering, or attempting to interfere, by threats, intimidation, or coercion, with an individual's rights secured by the United States Constitution, the California Constitution, or any laws of the United States or California.

74. Defendants, while acting under the color of law, engaged in threats, intimidation, and coercion to interfere with Ms. Young's constitutional rights, including but not limited to:

(a) Knowingly denying medical care and prescribed seizure medication to Ms. Young for five days, despite her repeated requests and the obvious risk of serious harm.

(b) Placing Ms. Young in a top bunk, despite clear medical contraindications, leading to a preventable fall, brain injury, and emergency surgery.

(c) Refusing to provide emergency medical assistance when Ms. Young suffered a violent seizure and fell from her bunk, and instead accusing her of faking it.

(d) Physically kicking Ms. Young while she was seizing on the ground instead of calling for medical intervention.

(e) Returning Ms. Young to a top bunk after brain surgery, ignoring medical restrictions and continuing to subject her to preventable injury.

(f) Taunting and harassing Ms. Young daily by banging an orange mallet on cell bars, despite her documented post-surgical brain injury and her pleas for them to stop.

75. These acts of intimidation, coercion, and threats were intended to discourage Ms. Young from asserting her rights, including her right to adequate medical care, her right to be free from cruel and unusual punishment, and her right to humane treatment under the Due Process clause of the Fifth Amendment to the United States Constitution.

76. Defendants knew of and disregarded an excessive risk to Ms. Young's health and safety, willfully engaging in actions that exacerbated her medical condition, demonstrating deliberate and conscious disregard for her constitutional rights.

77. Defendants' actions constitute intentional and reckless violations of the Bane Act because their conduct involved more than mere negligence—it involved

deliberate and overt acts of intimidation, coercion, and threats aimed at preventing Plaintiff from asserting her right to medical care.

78. As a direct and proximate result of Defendants' conduct, Ms. Young suffered:

> (a) Severe physical injuries, including a traumatic brain injury, requiring emergency surgery.
>
> (b) Unnecessary and prolonged pain and suffering due to untreated medical conditions.
>
> (c) Severe emotional distress, anxiety, and psychological trauma, caused by deliberate medical neglect and retaliatory mistreatment.
>
> (d) A deprivation of her constitutional and statutory rights, in violation of both federal and California law.

79. Defendants' acts were malicious, oppressive, and in reckless disregard of Plaintiff's rights, entitling her to an award of punitive damages under California Civil Code § 52.1.

### THIRD CAUSE OF ACTION
Intentional Infliction of Emotional Distress
(Against Defendant Officers John or Jane Doe 16-30)

80. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

81. From February 10, 2020, to February 26, 2020, Defendant Officers John or Jane Doe 16-30 intentionally traumatized Ms. Young (who had recently had brain surgery) by using an orange mallet to hit the bars of the cells yelling "free headaches" causing Ms. Young extreme pain and stress.

82. Plaintiff is informed and believes, and thereon alleges, that such acts of Defendant Officers John or Jane Doe 16-30 were intentional, extreme, and outrageous. Ms. Young is further informed and believes, and thereon alleges, that

such actions were done with the intent to cause serious emotional distress or with reckless disregard of the probability of causing Ms. Young serious emotional distress.

83. As a direct, legal, and proximate result of such acts of Defendant Officers John and Jane Doe 16-30, Ms. Young suffered emotional distress which has caused Plaintiff to sustain severe, serious, and permanent injuries to her person, all to her damage in a sum to be shown according to proof.

84. As a direct, legal, and proximate result of such acts of Defendant Officers John and Jane Doe 16-30, Ms. Young was compelled to and did employ the services of hospitals, physicians and surgeons, nurses. and the like, to care for and treat her. and did incur hospital, medical, professional, and incidental expenses.

85. Ms. Young is informed and believes, and upon such information and belief alleges, that she will necessarily by reason of her injuries, incur additional like expense for an indefinite period of time in the future, all to Ms. Young's damage in a sum to be shown according to proof.

86. Ms. Young is informed and believes that such acts directed toward her were carried out with a conscious disregard of her right to be free from such tortious and criminal behavior, such as to constitute oppression, fraud, or malice pursuant to California Civil Code § 3294, entitling her to punitive damages in an amount appropriate to punish and set an example of said Defendant.

## FOURTH CAUSE OF ACTION
### Negligence
(Against Defendant GEO and Defendant Officers John or Jane Doe 16-30)

87. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

88. Defendants GEO Group and John or Jane Doe 16-30 had a legal duty of care to ensure the health, safety, and well-being of inmates, including Ms. Young, while she was in their custody. This duty included, but was not limited to:

(a) Providing adequate medical care and treatment to detainees with known medical conditions.

(b) Ensuring that detainees were housed in a safe environment that accommodated their medical needs.

(c) Properly training and supervising correctional officers and staff to respond to medical emergencies.

(d) Protecting detainees from unnecessary pain, suffering, and harm caused by staff negligence.

89. Defendants breached their duty of care to Ms. Young in multiple ways while she was housed at GEO's Western Region Detention Facility, including but not limited to:

(a) Delaying and obstructing access to prescribed seizure medication, forcing Ms. Young to go without essential treatment for an extended period, increasing her risk of further seizures.

(b) Failing to intervene when GEO correctional officers taunted Ms. Young, knowing she had recently undergone emergency brain surgery, by striking metal bars with a mallet while yelling "free headaches," causing severe pain and psychological distress.

(c) Failing to ensure proper post-surgical care, including delaying access to medical evaluations and necessary follow-up treatments, despite Ms. Young's visible surgical wounds, shaved head, and metal staples.

(d) Neglecting to monitor Ms. Young's medical condition, despite receiving documentation from BOP about her serious health risks, leading to unnecessary pain and suffering.

(e) Failing to provide reasonable accommodations for Ms. Young's medical condition, including failing to intervene when correctional officers harassed and mistreated her.

(f) Ignoring Ms. Young's repeated requests for medical attention, forcing her family and legal counsel to intervene before she was finally seen by medical staff.

90. Defendants' failure to act with reasonable care directly caused serious and preventable injuries, including but not limited to:

(a) Severe physical pain and suffering, including complications from her untreated medical condition.

(b) Emotional distress and psychological trauma, exacerbated by the hostile and neglectful environment created by Defendants.

(c) Long-term medical complications due to the lack of follow-up care and continued exposure to unnecessary harm.

91. Defendants' actions and omissions were a substantial factor in causing Plaintiff's injuries. Had Defendants taken reasonable and legally required precautions, Ms. Young's injuries would not have occurred.

92. As a direct and proximate result of Defendants' negligence, Ms. Young suffered and continues to suffer serious harm, for which she is entitled to compensatory and punitive damages.

## AGENCY

93. At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendant GEO occurred within the scope of the actual or apparent authority of such person on behalf of said Defendant.

94. Defendant GEO is therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

## RESPONDEAT SUPERIOR

95. At and during the time of the acts and/or omissions complained of herein, said acts and/or omissions of any employee of Defendants occurred within the

scope of the general authority and for the accomplishment of the objectives for which such employee was employed.

## MISNOMER OR MISIDENTIFICATION

96. In the event any parties are misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein. In the event that the true parties are misidentified, Plaintiff hereby asserts reliance upon the doctrine of misidentification.

## DAMAGES

97. As a proximate cause, producing cause, and/or cause of the Defendants' conduct, and all other allegations of acts/omissions herein, Plaintiff is entitled to recover actual damages, consequential damages, incidental damages, and compensatory damages, as allowed by law, which specifically include, but are not limited to, the following damages:

        (a) Medical, hospital, pharmaceutical expenses in the past;

        (b) Medical, hospital, pharmaceutical expenses that in all reasonable probability will be incurred in the future;

        (c) Physical pain and suffering in the past;

        (d) Physical pain and suffering that will in all reasonable probability be incurred in the future;

        (e) Physical impairment in the past;

        (f) Physical impairment which, in all reasonable probability, will be suffered in the future;

        (g) Loss of earning capacity that in all probability will be incurred in the future;

        (h) Mental anguish in the past;

        (i) Mental anguish that in all reasonable probability will be incurred in the future; and

        (j) Cost of medical monitoring and prevention in the future.

## EXEMPLARY DAMAGES

98. Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed knowingly, willfully, intentionally, with malice, with actual awareness, and with the specific and predetermined intention of said Defendants at the expense of Plaintiff. Defendants specifically intended to cause substantial injury or harm to the Plaintiff. In order to punish said Defendant for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages.

## ATTORNEYS' FEES AND COSTS

99. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs.

## PRAYER FOR RELIEF

100. THEREFORE, Plaintiff Melissa Young respectfully requests the Court for the following:

(a) Award punitive damages against all Defendants as appropriate and as allowed by law;

(b) Award compensatory damages against all Defendants, jointly and severally, as allowed by law;

(c) Grant reasonable attorneys' fees, litigation expenses, and court costs; and

(d) Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

Dated: ___February 24, 2025__

Respectfully submitted,

By:   **s/Michelle Cameron-Hunsaker**
HUNSAKER LAW
Attorney for Plaintiff
MELISSA YOUNG