UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MELISSA YOUNG,

                              Plaintiff,

v.

LOUIS WILLIAMS, et al.,

                              Defendants.

Case No.: 22-cv-00125-AJB-KSC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**(Doc. No. 65)**

       This is a civil rights action arising out of Melissa Young's ("Plaintiff") time in custody. The operative complaint is the Third Amended Complaint ("TAC"), which Plaintiff brings against Louis Williams, II, ("Defendant"), the warden employed by the Federal Bureau of Prisons at Metropolitan Correctional Center, San Diego, the GEO Group Inc. ("GEO"), and their respective Correctional Officers and Staff (collectively, "Defendants"). (Doc. No. 64–1.) Before the Court is Defendant Williams' motion to dismiss. (Doc. No. 65.) The motion to dismiss is fully briefed. (Doc. Nos. 68, 69.) For the reasons set forth below, the Court **GRANTS** Defendant's motions to dismiss.

///

///

1

## I.    BACKGROUND[1]

On November 17, 2019, the Chula Vista Police Department placed Plaintiff into custody. (TAC ¶ 15.) That same day, Plaintiff experienced a seizure and was taken to Scripps Chula Vista Emergency Room for treatment. (*Id.*) She was then transported to GEO's Western Region Detention Facility. (*Id.*) On December 4, 2019, Plaintiff was released on bond and entered a residential drug treatment program. (*Id.* ¶¶ 18–19.) Plaintiff was discharged from the program on January 23, 2020, and reported to Pretrial Services the next day. (*Id.* ¶ 19.) Plaintiff was then transported to Metropolitan Correction Center ("MCC San Diego"), a facility operated by the Bureau of Prisons ("BOP"). (*Id.* ¶ 20.)

At some point between mid-November 2019 and early February 2020, BOP assigned Plaintiff to a top bunk at MCC San Diego. (*Id.* ¶ 24.) She informed the Corrections Office at MCC San Diego that due to her seizures, she required a bottom bunk, but the Corrections Office ignored her request. (*Id.*) Plaintiff also requested to go to the medical department and completed a form to obtain her prescribed medications. (*Id.* ¶ 25.) Plaintiff alleges those requests were also ignored. (*Id.* ¶¶ 26–27.)

On January 29, 2020, Plaintiff felt ill, asked to be seen by the medical unit at MCC San Diego, but was again ignored. (*Id.* ¶ 27.) She thereafter had a seizure and fell from her top bunk. (*Id.*) When other inmates attempted to get help, the officers claimed Plaintiff was faking the seizure, and one of them kicked her. (*Id.* ¶¶ 28–29.) The corrections officers did not contact emergency medical services. (*See id.* ¶¶ 29–30.) Plaintiff's defense counsel learned about Plaintiff's condition and contacted MCC San Diego. (*Id.* ¶ 30.) She was then transported to University of California San Diego ("UCSD") Hospital, where she underwent emergency brain surgery. (*Id.* ¶ 32.)

Plaintiff returned to MCC San Diego on February 3, 2020, and was again assigned to a top bunk. (*Id.* ¶ 34.) A fellow inmate switched bunks with Plaintiff so she could have a bottom bunk. (*Id.*) On February 5, 2020, Plaintiff entered another residential treatment

---

[1] The following facts are taken from the TAC and assumed true for purposes of this motion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

2

program. (*Id.* ¶ 44.) Plaintiff felt ill the next day and requested to go to an emergency room. (*Id.* ¶ 45.) The medical staff informed her that she had been medically cleared and did not need emergency care. (*Id.*) Plaintiff then called her sister, who took her to Sharp Chula Vista Emergency Room. (*Id.*) The Sharp Chula Vista Emergency Room admitted Plaintiff and kept her under observation. (*Id.*) She was later transferred to UCSD Hospital's neurology department for her post-surgery follow-up and discharged on February 7, 2020. (*Id.* ¶ 46.)

After discharge, Plaintiff was placed in GEO's medical unit for three days, followed by assignment to the general population until her release on February 26, 2020. (*Id.* ¶¶ 48–50.) During her time in general population, Plaintiff alleges GEO officers would "daily take an orange mallet and walk down the halls banging it on the cell bars yelling 'free headaches.'" (*Id.* ¶¶ 50, 89b.) Plaintiff alleges Defendant and John or Jane Doe 1–15 BOP Correctional Officers and Staff ("BOP Officers") also intentionally traumatized her by using an "orange mallet to hit the bars of the cells yelling 'free headaches.'" (*Id.* ¶¶ 74f, 81.)

Plaintiff asserts Defendant and BOP Officers failed to provide timely and necessary medical intervention; she states these omissions caused the brain bleed that necessitated her surgery. (*Id.* ¶ 41.)

Plaintiff brought suit against Defendants in 2022. (Doc. No. 1.) The Court dismissed the First Amended Complaint, (Doc. No. 33), and the Second Amended Complaint, (Doc. No. 58). Plaintiff later filed the TAC. Plaintiff alleges Fifth Amendment Due Process violation claims for deliberate indifference to serious medical needs (Count 1) against Defendant and BOP Officers. (*Id.* ¶¶ 58–71.) Plaintiff also brings a claim under the Bane Act (Count 2) against all Defendants. (*Id.* ¶¶ 72–79.) The TAC includes claims for intentional infliction of emotional distress (Count 3) against GEO and John or Jane Doe 16–30 GEO Officers ("GEO Officers"), and negligence (Count 4) against GEO Officers. (*Id.* ¶¶ 80–92.) This Order follows.

///

## II.    LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To determine the sufficiency of the complaint, the court must assume the truth of all factual allegations therein and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Although a court must take all the factual allegations in a complaint as true, it is not required to accept conclusory statements. *Iqbal*, 556 U.S. at 678.

Additionally, a party may seek dismissal of an action pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). The party asserting subject-matter jurisdiction has the burden of persuasion for establishing it through proving the insufficiency of a plaintiff's pleadings. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

## III.    DISCUSSION

Defendant moves pursuant to Federal Rules of Civil Procedures 12(b)(6) and 12(b)(1) to dismiss with prejudice Plaintiff's TAC. (Doc. No. 65 at 7.) Defendant moves to dismiss two of Plaintiff's claims in the TAC. (*Id.*) First, Defendant moves to dismiss Plaintiff's Fifth Amendment Due Process claim brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), where Plaintiff alleges constitutional violations under the Fifth Amendment by federal officials for deliberate indifference to serious medical needs (Count 1) (the "*Bivens* claim"). (*Id.* at 9–16.) Defendant also argues he is entitled to qualified immunity. (*Id.* at 16–17.) Second, Defendant moves to dismiss Plaintiff's Bane Act claim (Count 2). (*Id.* at 17–18.)

4

### A. Plaintiff's Fifth Amendment Due Process Claim

In the TAC, Plaintiff asserts one cause of action for a violation of Fifth Amendment Due Process against Defendant for deliberate indifference to serious medical needs (Count 1). (TAC ¶¶ 58–71.) Plaintiff asserts that her Fifth Amendment claim brought against Defendant for damages is not brought under *Bivens*. (Doc. No. 68 at 5–6.) However, a claim asserting constitutional violations against a federal employee for monetary damages is inherently a *Bivens* claim. *See Bivens*, 403 U.S. at 397. In *Bivens*, the Supreme Court established an implied private right of action for damages against federal officials in their personal capacity alleged to have violated a citizen's constitutional rights. *Id.*; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (recognizing *Bivens* as the first-time courts confirmed an implied private action for damages against federal officers). Plaintiff cannot assert a Fifth Amendment claim for compensatory and punitive damages, (TAC ¶100)**,** without bringing a *Bivens* claim. *See Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.")).

Plaintiff relies on *Bell v. Wolfish*, 441 U.S. 520 (1979), to support the statement that "the Supreme Court has recognized that the Fifth Amendment Due Process Clause provides a direct cause of action to pretrial detainees alleging deliberate indifference to medical needs." (Doc. No. 68 at 5–6.) However, Plaintiff's reliance and interpretation of *Wolfish* is misplaced. In *Wolfish*, the plaintiff was seeking an injunction, not damages. *See* 441 U.S. at 544–51 ("petitioners request this Court to review the District Court's *injunction*") (emphasis added). *Wolfish* does not provide an implied private right of action for damages, as Plaintiff argues it does. *Id.* at 523 (stating the district court "'intervened broadly into almost every facet of the institution' and *enjoined* no fewer than 20 MCC practices on constitutional and statutory grounds") (emphasis added). There are only three established contexts under *Bivens* in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (emphasis

added). Therefore, the Court will proceed with its analysis of Plaintiff's Fifth Amendment Due Process claim under *Bivens*.

### 1. *Bivens* **Analysis**

The Supreme Court established an implied private right of action for tortious deprivation of constitutional rights against federal officials in their personal capacity in only three contexts. *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *see also Kekai Watanabe v. Derr*, 115 F.4th 1034, 1036 (9th Cir. 2024). First, in *Bivens*, the Supreme Court held a plaintiff alleging to have been subject to an unlawful arrest and search could bring a Fourth Amendment claim for damages against federal agents, even though no federal statute authorized such a claim. *Bivens*, 403 U.S. at 396; *see also Hernandez v. Mesa*, 589 U.S. 93, 98–99 (2020). Second, in *Davis v. Passman*, the Court held the Fifth Amendment Due Process Clause gave the plaintiff, a former congressional staffer, a damages remedy for gender discrimination when no alternative remedy existed.  442 U.S. 228, 248 (1979). Finally, in *Carlson v. Green*, the Court held the Eighth Amendment's Cruel and Unusual Punishments Clause gave decedent's estate a damages remedy when federal jailers failed to treat decedent's asthma, resulting in his death. 446 U.S. at 25.

Expanding the *Bivens* remedy beyond these three scenarios is "disfavored." *Iqbal*, 556 U.S. at 675; *see also Chambers v. Herrera*, 78 F.4th 1100, 1104 (9th Cir. 2023) ("[T]he Court recently issued a trilogy of cases reinforcing said disfavor.") (citing *Egbert*, 596 U.S. at 484; *Mesa*, 589 U.S. at 98–99; and *Abbasi*, 582 U.S. at 135). The Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Malesko*, 534 U.S. at 68. When deciding whether to provide a damages remedy, "Congress is in a better position [than the courts] to decide whether or not the public interest would be served" by imposing a "new substantive legal liability." *Schweiker v. Chilicky*, 487 U.S. 412, 426–27 (1988) (quoting *Bush v. Lucas*, 462 U.S. 367, 390 (1983)).

The Court addresses Plaintiff's *Bivens* claim by proceeding in two steps. "First, we ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S.

at 492 (quoting *Abbasi*, 582 U.S. at 1849). Second, if a case presents a new *Bivens* context, then the Court examines whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 1854). These steps resolve to a single question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492; *see also Marquez v. Rodriguez*, 81 F.4th 1027, 1030 (9th Cir. 2023) (stating the *Bivens test* "will foreclose relief in all but the most extraordinary cases").

Plaintiff brings a *Bivens* claim against Defendant under the Fifth Amendment for deliberate indifference to Plaintiff's serious medical needs. (*See* TAC ¶¶ 58–71.) Plaintiff alleges Defendant knew or should have known of Plaintiff's seizure condition, including that it required medication and medical care, which was not provided to Plaintiff, and that Defendant failed to provide Plaintiff with adequate treatment for her head injuries sustained on January 29, 2020, when she fell from her top bunk following a seizure. (*Id.*) Defendant argues this claim should be dismissed because 1) Plaintiff's deliberate indifference claim is conclusory, 2) Plaintiff does not allege that Defendant was personally involved in the alleged constitutional violations, and supervisory liability is inapplicable to *Bivens* suits, 3) Plaintiff's *Bivens* claim presents a new context and special factors counsel against extension, and 4) Plaintiff had alternative remedies other than bringing a *Bivens* claim. (Doc. No. 65 at 9–16.) Plaintiff responds that the cause of action arises under the Fifth Amendment Due Process Clause itself and not *Bivens*. (Doc. No. 68 at 5 (citing TAC ¶¶ 58–71).) Plaintiff asserts she adequately plead her deliberate indifference to serious medical needs claim and that Defendant is liable under the Fifth Amendment. (Doc. No. 68 at 6.)

### i. Supervisory Liability

Federal Rules of Civil Procedure 8 and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice to establish that a defendant personally violated a plaintiff's clearly established constitutional rights. *See Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678; *see also Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). A *Bivens* claim is brought against an individual official for their "own acts, not the acts of others." *Abbasi*, 582 U.S. at 140. To state a *Bivens* claim against a government official in their individual capacity, a plaintiff must plead "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 676). "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Id.* at 141; *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

Defendant argues Plaintiff is alleging a *Bivens* cause of action that is conclusory and "based on [Defendant's] position as a supervisor, with no allegations concerning his own individual involvement in the alleged violations[.]" (Doc. No. 65 at 6.) Here, the TAC attempts to impose supervisory liability upon Defendant based solely on his position as the warden employed by the BOP at MCC San Diego. (*See* TAC ¶¶ 40, 61.) The TAC contains no allegations of specific acts or omissions of Defendant against Plaintiff. (*See id.* ¶¶ 39–41.) Plaintiff alleges Defendant: (1) knew of and disregarded an excessive risk to Ms. Young's health; (2) caused the risk and continued to do so despite obvious evidence of serious harm; (3) tolerated and fostered an environment of disorganization within the facility; (4) failed to properly staff the unit; (5) failed to hire competent staff personnel; (6) failed to train correctional officers and ensure timely screening, assessment, and medical treatment for injured inmates; (7) took no effective measures to protect Plaintiff or ensure her safety, including conducting appropriate health assessments or medical evaluations;

and (8) failed to initiate necessary medical interventions or transport Plaintiff to an appropriate medical facility promptly. (*Id.* ¶¶ 39–41.)

Plaintiff fails to mention facts of Defendant's individual actions or omissions that support these conclusory allegations. (*See, e.g.*, *id.*) Plaintiff does not connect any deliberate indifference by Defendant in hiring, training, assessing, managing, or supervising BOP Officers with any specific harm to Plaintiff. (*Id.* ¶¶ 39–41.) While Plaintiff alleges that Defendant tolerated and fostered an environment of disorganization within the facility, Plaintiff does not identify how Defendant fostered an environment of disorganization, or whether she experienced harm as a result. (*Id.*)

Plaintiff also fails to identify how Defendant did not initiate necessary medical interventions. (*See generally id.*) In the TAC, Plaintiff alleges she had a known seizure disorder requiring medication and that Defendant was put on notice of this condition. (*Id.* ¶¶ 39, 60, 63.) Plaintiff, however, does not describe how Defendant was put on notice of her seizure condition. (*See generally id.*) In response, Defendant states Plaintiff "inconsistently refers to her medical situation has an 'undiagnosed seizure condition,' [Doc.] No. 64 ¶ 23, and 'a known seizure condition requiring prescribed medication,' [Doc.] No. 64 at ¶ 60." (Doc. No. 65 at 2 n.1.) Plaintiff clarified in her Opposition to Defendant's motion to dismiss that her seizure condition was unknown "until the point she suffered her first seizure in the custody of the Chula Vista Police Department." (Doc. No. 68 at 6 n.1.)

At the motion to dismiss stage, the Court is limited to the facts pled within the four corners of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009); *MCI Communs. Servs. v. City of Eugene*, 359 F. App'x 692, 697 (9th Cir. 2009). The Court has previously advised Plaintiff not to amend her pleadings in opposition to the motion to dismiss. (Doc. No. 59 at 11 ("Plaintiff cannot amend the SAC in her opposition brief to state a new claim under the Fourteenth Amendment.").) Plaintiff has again failed to properly amend her pleadings in the TAC. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (explaining when the legal sufficiency of a complaint's allegations is tested by a motion to

dismiss, the court may only review the operative complaint) (citing *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).

The above-mentioned allegations fail to identify Defendant's individual conduct that led to the deprivation of Plaintiff's Fifth Amendment Due Process rights. *See Starr*, 652 F.3d at 1206 (confirming supervisory liability as inapplicable to *Bivens* claims without proof that official violated plaintiff's rights through their own individual actions). Even though dismissal of Plaintiff's Fifth Amendment Due Process claim is warranted, the Court will nevertheless address Plaintiff's *Bivens* claim.

### ii. Existing *Bivens* Contexts

Recognizing a *Bivens* cause of action in this case would require extending *Bivens* to a new context, as this case is materially different from the *Bivens*, *Davis*, and *Carlson* contexts. *See Lanuza v. Love*, 899 F.3d 1019, 1027 n.5 (9th Cir. 2018) (listing Ninth Circuit cases where plaintiff's *Bivens* claim extended to a new context). The Supreme Court has declined to provide an exhaustive list of differences that are meaningful enough to make a given context new, but it noted the following examples:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139–40. Only in three instances has the Ninth Circuit recognized sufficiently similar situations to sustain a *Bivens* cause of action without creating a new context. *See, e.g.*, *Ioane v. Hodges*, 939 F.3d 945, 952 (9th Cir. 2018); *Brunoehler v. Tarwater*, 743 F. App'x. 740, 742 (9th Cir. 2018); *Reid v. United States*, 825 F. App'x. 442, 444–46 (9th Cir. 2020). *Ioane* and *Brunoehler* both involved Fourth Amendment claims indistinguishable from *Bivens* itself. *See Ioane*, 939 F.3d at 952; *see also Brunoehler*, 743 F. App'x. at 742. *Reid* involved similar Eighth Amendment prisoner mistreatment claims as those at issue in *Carlson*. *Reid*, 825 F. App'x. at 444–46.

In *Bivens*, a plaintiff alleging to have been subject to an unlawful arrest and search was permitted to bring a Fourth Amendment claim for damages against federal agents. *Bivens*, 403 U.S. at 389. Here, Plaintiff is bringing a Fifth Amendment Due Process violation against BOP officers during pretrial detention for deliberate indifference to medical needs. (TAC ¶¶ 58–71.) This context differs from *Bivens* where the claim was against federal agents who allegedly "manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert*, 596 U.S. at 490 (citing *Bivens*, 403 U.S. at 397). The difference in constitutional rights brought pursuant to the Fifth Amendment, rather than the Fourth Amendment, is also meaningful. *See Abbasi*, 582 U.S. at 148 (recognizing a case "can present a new context for *Bivens* purposes if it implicates a different constitutional right").

In *Davis*, a plaintiff alleging to have been subject to gender discrimination through her employment was permitted to bring a Fifth Amendment Due Process claim for damages against a former congressional staffer. *Davis*, 442 U.S. at 248. Here, the officers alleged to have violated Plaintiff's Fifth Amendment rights are BOP officers, not congressional staffers. Although *Davis* recognized a Fifth Amendment *Bivens* remedy, the nature of the violation at issue, employment discrimination, was drastically different from the violation here, deliberate indifference to serious medical needs. A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case recognized as one of the three *Bivens* contexts. *Hernandez*, 589 U.S. at 103.

*Carlson* presents the closest comparison to Plaintiff's *Bivens* claim. *See Carlson*, 446 U.S. at 16–19. In *Carlson*, a plaintiff alleging to have been subject to cruel and unusual punishment was permitted to bring an Eighth Amendment claim for damages against federal jailers who failed to treat decedent's asthma, resulting in his death. *Id.* at 25. However, *Carlson* nonetheless differs meaningfully from Plaintiff's claim. First, *Carlson* differs because the case involved an Eighth Amendment claim brought by a convicted prisoner, as opposed to this Fifth Amendment Due Process violation claim brought by a plaintiff when she was a pretrial detention. *See Abbasi*, 582 U.S. at

11

148 (holding *Bivens* claim under the Fifth Amendment alleging abuse of pretrial detainees presented new *Bivens* context partially because *Carlson* was predicated on the Eighth Amendment); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (distinguishing language of the Fifth Amendment Due Process clause and Eighth Amendment Cruel and Unusual Punishment clause).

Second, the difference between convicted prisoners and pretrial detainees is not a "mere superficial distinction." *Hernandez v. Cnty. of Los Angeles*, No. 2:20-cv-03869-DSF-JC, 2023 WL 5917422, at *7 (C.D. Cal. July 19, 2023), report and recommendation adopted by 2023 WL 5916446 (Sept. 11, 2023); *see also Kingsley*, 576 U.S. at 400–02. The Ninth Circuit recently refused to extend a *Bivens* context to a pretrial detainee seeking damages against federal correctional officers at MCC San Diego based on the Fifth Amendment's Due Process Clause. *Rodriguez*, 81 F.4th at 1028. The plaintiff in *Rodriguez* alleged that the officers were deliberately indifferent to a substantial risk of serious harm when they failed to protect him from the other detainees. *Id.* at 1028–29. The court ruled the *Carlson* context, for convicted prisoners, does not apply to pretrial detainees due to significant differences between the two groups including the nature and duration of their confinement, facility design, inmate safety risks, and overall operational considerations. *Id.* at 1032; *see also Smith-Garcia v. Burke*, 815 F. App'x. 187, 188 (9th Cir. 2020) (unpublished) (finding new *Bivens* context for Eighth Amendment claim that probation officer was deliberately indifferent to a probationer's medical care).

The legal standard for evaluating whether a federal officer violated an individual's constitutional rights is also different for pretrial detainees and convicted prisoners. *See Kingsley*, 576 U.S. 389 at 400. Claims brought by pretrial detainees for deliberate indifference are reviewed under an objective standard, meanwhile claims brought by convicted prisoners are reviewed under a subjective standard. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016), *cert. denied*, 580 U.S. 1099 (2017) (affirming there is no single deliberate indifference standard for both pretrial detainees and convicted prisoners); *Cramer v. Jenkins*, No. CV 23-4659-SSS(E), 2023 WL 6783509, at

*4 (C.D. Cal. Sept. 7, 2023) ("An objective deliberate indifference standard applies to claims brought by pretrial detainees, whereas a subjective deliberate indifference standard applies to claims brought by convicted prisoners.").

To bring a claim against federal officers as a convicted prisoner, the plaintiff must prove the officer's subjective awareness of the serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (finding convicted prisoners must prove official's subjective knowledge, awareness of facts from which the inference could be drawn that a substantial risk exists, and that the official drew the inference). Meanwhile, a pretrial detainee does not need to prove those subjective elements about the officer's actual awareness." *Castro*, 833 F.3d 1071. The objective standard for Plaintiff as a pretrial detainee differs from the subjective standard used in *Carlson*. *See Abbasi*, 582 U.S. at 140. The difference in the two legal standards is sufficiently material to create a new *Bivens* context. *See id.* at 148 (clarifying the fact that the differences between a "given claim and previous *Bivens* cases are small is insignificant" considering the Supreme Court's reluctancy to extend the *Bivens* remedy).

Finally, Plaintiff's claims of deliberate indifference to serious medical needs differ from the claims in *Carlson*. In *Carlson*, the inmate suffered from chronic asthma that ultimately led to the prisoner's death. *See Carlson*, 446 U.S. at 16 n.1. Here, Plaintiff alleges she undertook emergency brain surgery due to a brain bleed she had sustained from seizing and falling off the top bunk. (*See* TAC ¶ 32.) Both seizures and emergency brain surgery are undoubtedly serious medical conditions.

Even accepting, *arguendo*, that her medical need was objectively serious, Plaintiff fails to plausibly allege that Defendant was put on notice of her medical needs and failed to provide adequate medical treatment. In *Carlson*, the officers kept the inmate in an inadequate facility against doctors' advice and gave him the wrong treatments, such as "contra-indicated drugs which made his attack more severe" and "a respirator known to be inoperative" that only worsened his breathing. *Carlson*, 446 U.S. at 16–18. Here, Plaintiff alleges Defendant placed her in a top bunk, denied her prescribed medication for five days,

13

and ignored repeated medical requests. (TAC ¶ 67.) In the TAC, Plaintiff asserts "[a]t the time of her intake, Ms. Young had a known seizure condition requiring prescribed medication. Despite this, Defendants assigned her to a top bunk in the general population—a decision that directly disregarded her medical condition and posed a substantial risk of harm." (*Id.* ¶ 60.)

Plaintiff fails to allege how Defendant was put on notice of her seizure condition when she was admitted to the facility. (*See generally* TAC.) Plaintiff clarifies in her Opposition that her seizure condition was unknown to Defendant "until the point she suffered her first seizure in the custody of the Chula Vista Police Department." (Doc. No. 68 at 6 n.1.) Defendant did not have the same notice of Plaintiff's seizure condition as the officers in *Carlson* had of the inmate's asthma condition. *See Martinez v. United States Bureau of Prisons*, No. 5:15-cv-02160-TJH (AFM), 2019 WL 5432052, at *9 (C.D. Cal. Aug. 20, 2019) (determining the prisoner's medical condition, albeit serious, did not fit in the same context as *Carlson* because the defendant did not demonstrate the same level of notice and deliberate indifference through the provided medical care); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (explaining prisoners must demonstrate both (1) a serious medical need and (2) defendant's response to the need was deliberately indifferent). The facts here thus render Plaintiff's medical care claims meaningfully different from *Carlson*. *See Davis v. Fed. Bureau of Prisons*, No. 5:21-cv-1475-CAS (SK), 2022 WL 18460704, at *2 (C.D. Cal. Dec. 8, 2022) (holding claim that nurse performed unnecessary surgery on inmate's leg meaningfully differed from *Carlson*), report and recommendation adopted, 2023 WL 405319 (C.D. Cal. Jan. 24, 2023); *Mendez v. United States*, No.: 1:17-cv-00555-NONE-JLT (PC), 2020 WL 8513584, at *14 (E.D. Cal. Mar. 24, 2020) (comparing the type of care provided in *Carlson* to the plaintiff's allegedly deficient care: giving the inmate counterproductive drugs and an inoperative respirator resulting in death versus specific actions not shown to be improper to address plaintiff's pain resulting in two months of tooth pain), report and recommendation adopted, 2021 WL 537271 (E.D. Cal. Feb. 12, 2021).

Even if these differences may seem small, they nonetheless satisfy the new-context inquiry for *Bivens* claims. *See Abbasi*, 582 U.S. at 149. Plaintiff's claim in this action presents a new *Bivens* context because it implicates constitutional rights not at issue in *Carlson*, among other differences noted above. *See id.* at 148. Because this case presents a new *Bivens* context, the Court must turn to the second part of the inquiry, to determine whether there are special factors indicating the Judiciary is less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 136).

### iii.  Special Contexts

"If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 137). The alternative remedial structure does not need to afford damages or a right of judicial review. *See Egbert*, 596 U.S. at 493; *see also Pettibone v. Russell*, 59 F.4th 449, 456–57 (9th Cir. 2023). Here, Plaintiff had the ability to pursue an alternative remedy through the BOP's administrative remedy. *See* 28 CFR § 542.13–15. The availability of the BOP's administrative remedy program suffices to preclude recognizing a *Bivens* remedy for Plaintiff's claims here. *See, e.g.*, *Malesko*, 534 U.S. at 74 (holding BOP's administrative remedy program as reason to decline to recognize a *Bivens* claim); *Chambers*, 78 F.4th at 1107 (same); *see also Toney v. William*s, No. 3:18-cv-2786-WQH (KSC), 2020 WL 1912168, at *5–6 (S.D. Cal. Apr. 4, 2020) (dismissing an *Bivens* claim because alternative remedial structure existed through the BOP administrative grievance process); *Rodriguez*, 81 F.4th at 1033 (declining to extend *Bivens* to federal pretrial detainee's Fifth Amendment claim due to availability of the BOP administrative remedy procedures).

Accordingly, as no *Bivens* remedy is available here, Plaintiff's claim against Defendant in his individual capacity cannot proceed in this action. Further amendment would be futile as this is Plaintiff's fourth time filing a complaint. (Doc. Nos. 1, 10, 34, 64.) Therefore, the claim should be dismissed without leave to amend. *See Mujica v.*

*AirScan Inc.*, 771 F.3d 580, 593 & n.8 (9th Cir. 2014) (recognizing leave to amend complaint as unwarranted where amendment would be futile), *cert. denied*, 577 U.S. 1049 (2015); *Miller v. Yokohama TireCorp.*, 358 F.3d 616, 622 (9th Cir. 2004) (finding the district court's discretion to deny leave to amend is "particularly broad" where the plaintiff has previously filed an amended complaint). Considering neither the Supreme Court nor the Ninth Circuit have recognized a *Bivens* remedy for a Fifth Amendment claim for deliberate indifference to serious medical needs for pretrial detainees, and amendment would be futile, the Court **DISMISSES** Plaintiff's *Bivens* claim against Defendant **WITHOUT LEAVE TO AMEND**.

### B. Qualified Immunity

Defendant argues he is entitled to qualified immunity, and that Plaintiff does not overcome the defense because the TAC fails to state a claim for a violation of a constitutional right. (Doc. No. 65 at 16–17.) Plaintiff asserts Defendant's qualified immunity defense is premature. (Doc. No. 68 at 7.)

Qualified immunity under federal law shields government officials from liability for civil damages, provided their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The Ninth Circuit has emphasized that qualified immunity is a fact specific analysis not generally resolved in a motion to dismiss. *See Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018) (noting determining claims of qualified immunity at the motion-to-dismiss stage raises issues for legal decision making); *see also Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (clarifying Rule 12(b)(6) dismissals are not appropriate unless the court can determine that qualified immunity applies based solely on the complaint).

The Court finds it is premature to conduct a fact intensive determination at this state of the proceedings. *See O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (stating

16

defendants will be free to assert a qualified immunity defense only once an evidentiary record has been developed through discovery); *see also Chavez v. Wynar*, 421 F. Supp. 3d 891, 903–04 (C.D. Cal. Nov. 8, 2019) (ruling it is premature to decide whether qualified immunity applies at the motion-to-dismiss stage because the factual record has not been developed); *United States ex rel. Darian v. Accent Builders, Inc.*, No. CV 00-10255 FMC (JWJx), 2005 WL 8161698, at *4 (C.D. Cal. Jan. 7, 2005) (same). As the Court is granting the motion to dismiss on the grounds discussed above, the Court need not address the merits of this qualified immunity argument at this time. *See Myles v. United States*, No. 5:19-cv-02036-WLH-(KKx), 2023 WL 11820027, at *6, (C.D. Cal. July 7, 2023) (declining to address qualified immunity because the court was granting the motion to dismiss on the *Bivens* claim).

## C. Bane Act Claim

Plaintiff's second cause of action against Defendant alleges violations of California's Bane Act. The Bane Act, California Civil Code § 52.1, provides for a claim against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state[.]" The Bane Act does not require a "threat, intimidation or coercion" to be "independent" from the threats, intimidation, or coercion inherent in the underlying constitutional or statutory violation. *See Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017); *see also Craig v. Cnty. of Santa Clara*, No. 17-CV-02115-LHK, 2018 WL 3777363, at *19 (N.D. Cal. Aug. 9, 2018). Alleged intentional conduct violating a constitutional or statutory right "which could be reasonably perceived as threatening, intimidating, or coercive" is sufficient to state a Bane Act claim. *See Skeels v. Pilegaard*, No. C12-2175 TEH, 2013 WL 970974, at *4 (N.D. Cal. Mar. 12, 2013); *see also M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) ("[A]t the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and that *Shoyoye* applies only when the

17

conduct is unintentional."). Both government actors and private actors may be held liable under the Bane Act. *See, e.g.*, *Van v. Wal-Mart Stores, Inc.*, 583 F. App'x. 761, 763 (9th Cir. 2014) (Plaintiff sufficiently pled Bane Act claim against Wal-Mart security guards).

Defendant argues Plaintiff does not allege with specificity that Defendant was personally involved in any alleged constitutional violations, nor does she plead a sufficient causal connection between the alleged constitutional violation and some wrongful conduct by Defendant. (Doc. No. 65 at 17.) Plaintiff asserts she has clearly alleged that Defendants interfered with Plaintiff's right to adequate medical care by denying her care, physically abusing her, and intentionally harassing her despite knowing that Plaintiff had just undergone brain surgery. (Doc. No. 68 at 8.) Defendant responds that Plaintiff fails to provide any specific notice of how Defendant independently violated her rights as she alleged "that *Defendants* interfered with Plaintiff's right." (Doc. No. 69 (citing Doc. No. 68 at 8 (emphasis added)).) Defendant also notes the violative conduct attributed to Defendant and BOP officers in the TAC is also attributed to GEO officers. (Doc. No. 69 at 5.)

Plaintiff has failed to sufficiently allege her Fifth Amendment Due Process rights were violated by Defendant's conduct. Because the Court finds Plaintiff has not sufficiently pleaded the violation of this right by Defendant, there is no constitutional or statutory right that is at issue. *See Pryor v. City & Cnty. of San Francisco*, 672 F. App'x 751, 752 (9th Cir. 2017) (determining plaintiff's Bane Act claim fails because there was no constitutional violation); *see also Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022) (same).

The lack of specificity in the TAC of Defendant's individual conduct does not meet the required pleading standard to give notice to Defendant of how he violated Plaintiff's rights. Plaintiff first alleges Defendant and BOP officers "intentionally harassed Plaintiff by creating loud noise disturbances, despite knowing that Plaintiff had just undergone brain surgery." (Doc. No. 68 at 8.) Later, Plaintiff alleges GEO officers also intentionally harassed her by creating loud noises. (*Id.*) Plaintiff assigns her claim of "striking metal bars

with a mallet while yelling 'free headaches,' causing severe pain and psychological distress" to Defendant and BOP officers, (Doc. No. 64–1 ¶¶ 74f, 81) ("taunting and harassing Ms. Young daily"), while also alleging the conduct as attributable to GEO officers. (*Id.* at ¶¶ 50, 89b.)

Plaintiff's inconsistent allegations are insufficient to provide "a showing of [D]efendant's specific intent to violate [her] constitutional rights." *Rodriquez v. Cnty of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018); *see also Ramirez v. City of San Jose*, No. 21-cv-08127-VKD, 2022 WL 875643, at *6 (N.D. Cal. Mar. 24, 2022) (dismissing claim against federal officer where "potentially inconsistent allegations do not give each defendant fair notice of the basis for the claim asserted against him"). Plaintiff has failed to prove how Defendant individually and intentionally violated her constitutional rights through his conduct. Because Plaintiff has not sufficiently alleged a constitutional or statutory violation, there is no reason to enquire further into the merits of his claim against Defendant. *See Cravotta*, 717 F. Supp. 3d at 965 (dismissing Bane Act claim where plaintiff failed to sufficiently plead deliberate indifference claim against defendants).

Plaintiff has failed to provide factual allegations showing a violation of clearly established in her TAC, as previously required by the Court. (*See* Doc. No. 59 at 11–12 ("To avoid dismissal, Plaintiff must ensure any third amended complaint contains factual allegations showing a violation of clearly established law.").) Because Plaintiff has not adequately pled that Defendant individually and intentionally interfered with any state or federal statutory or constitutional rights in an underlying violation, the Court **DISMISSES** Plaintiff's Bane Act claim against Defendant **WITHOUT LEAVE TO AMEND**. *See Swallow v. Torngren*, 789 F. App'x 610, 612 (9th Cir. 2020) (affirming that district court did not abuse its discretion when it denied leave to amend after plaintiff amended once as matter of right); *see also Hills v. City of Chula Vista*, No. 23-cv-1067-DMS-DDL, at *2–3 (S.D. Cal. May 1, 2025), Doc. No. 69 (dismissing plaintiff's Bane Act claim with prejudice after court previously granted leave to amend to fix conclusory allegations and plaintiff failed to do so). Considering leave has previously been given and amendment may

be futile, the Court **DENIES** Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (finding leave to amend should be granted unless amendment is futile).

### D. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motions to dismiss. (Doc. No. 65.) Plaintiff's Fifth Amendment claim against Defendant for deliberate indifference to serious medical needs (Count 1) is **DISMISSED WITHOUT LEAVE TO AMEND**. Plaintiff's Bane Act (Count 2) claim against Defendant is **DISMISSED WITHOUT LEAVE TO AMEND**.

Counsel are ordered to contact the assigned Magistrate Judge to set an Early Neutral Evaluation, and Case Management Conference.

**IT IS SO ORDERED**.

Dated:  July 31, 2025

Hon. Anthony J. Battaglia
United States District Judge

22-cv-00125-AJB-KSC